J. of probate<br>v.<br>Brooks, et al.

After a most attentive consideration of these provisions, we are satisfied, that they were not intended to apply in cases of estates administered in the insolvent course. In particular, we think the proviso in relation to demands, depending upon a contingency, was not intended to be so applied, because it is expressly provided that the executor or administrator shall be liable in such demands, as in *other cases* of estates not represented insolvent.

We are therefore of opinion, that the plaintiff is entitled to judgment.

## EDWARD PAGE *versus* STEPHEN WHEELER et a.

5   91<br>66   546<br>5   91<br>67   106

If a party deliver papers to the jury which he knows have not been read in the cause, the verdict, if in favor of such party, will be set aside, whether the papers were material or not.

But if a paper go to the jury by mistake, and they do not examine it, or if it be immaterial, this will furnish no ground for setting aside the verdict.

But if a material paper be delivered to the jury by mistake the verdict must be set aside. A party cannot be permitted in such a case, to show by the testimony of the jurors that they were not influenced by the paper.

ASSUMPSIT for goods sold and delivered, between the 24th December, 1826, and the 13th June, 1827.

The cause was tried here upon the general issue, at October term, 1828.

It was admitted that the goods mentioned in the declaration were sold to Jonathan Wheeler, one of the defendants by the plaintiff, and that they were delivered upon the credit of the said Jonathan. But there was evidence tending to prove, that Jonathan Wheeler was indebted to Stephen Wheeler, the other defendant,—that Stephen

knew that Jonathan must shortly fail—that Stephen advised Jonathan to go to Boston, where he had credit, and buy goods, and let him have them to pay what was due to him from Jonathan—that they went to Boston together, and Stephen there held out that Jonathan was in good credit—that Jonathan bought goods of the plaintiff—that large quantities of goods were transferred from Jonathan to Stephen, and that Jonathan failed and run away wholly insolvent.

Upon this evidence, it was left to the jury to say whether Stephen, for the purpose of securing his own debt, combined with Jonathan to procure these goods on Jonathan's credit, and for that purpose held out that Jonathan was a man in good credit, when he knew the fact to be otherwise, and the jury were instructed that if the goods were thus obtained, the defendants might be considered as partners in the purchase, and that both were liable.

The jury having returned a verdict in favor of the defendants, *L. Chamberlain*, for the plaintiff, moved for a new trial on the ground, that a large number of papers purporting to be bills of goods purchased by Jonathan Wheeler, of divers persons in the years 1826 and 1827, and also sundry papers purporting to be bills of goods purchased by Jonathan and J. F. Wheeler, in the years 1825 and 1826, were delivered to the jury, when they retired to consider of their verdict, the same papers never having been read during the trial nor seen by the plaintiff's counsel.

The fact that such papers went thus to the jury was not disputed.

*L. Chamberlain*, for the plaintiff.

*Woodbury* and *J. Parker*, for the defendant.

Richardson, C. J. delivered the opinion of the court.

If it appeared in this case, that the papers, which were delivered to the jury without being read upon the trial, were designedly so delivered by the party, who obtained the verdict, we should not stop to enquire, whether the

papers were material or not, but should at once set aside the verdict as a proper punishment for the misconduct of the party. 5 Pick. 296, *Hix* v. *Drury* ; 3 B. & B. 272, *Coster* v. *Merest*.

But we see nothing, that affords any reasonable ground to suspect, that the papers were handed to the jury with any improper views. It is highly probable, that they went to the jury inadvertently and by mistake among other papers.

If a paper goes by mistake to the jury, but they never examine it, the verdict is not to be set aside on that account. 3 Mass. Rep. 252, *Hackley* v. *Hastie*.

In this case, as there is no evidence to the contrary, we must presume that the jury examined all the papers which were delivered to them.

The rule seems to be, that, if material papers not read in evidence are handed to the jury by mistake, this is a sufficient cause for granting a new trial. And it is not competent to the party who has obtained the verdict, to prove by the jurors that they were not influenced by the papers in finding their verdict ; but the court must be governed by the tendency of the papers apparent from the face of them. 5 Mass. Rep. 405, *Whitney* v. *Whitman*.

The question then is, were the papers which went to the jury by mistake in this cause so wholly immaterial, that they cannot be presumed to have had any influence upon the verdict ?

We are of opinion, that those papers were wholly immaterial. It was not pretended on the part of the plaintiff that there was any partnership between Jonathan and Stephen, Wheeler, or that they were in any way connected in business except in relation to the goods purchased just before Jonathan absconded. The bills of parcels then could have no tendency to shew any thing but what was conceded—that Stephen had been making purchases in his own name up to the time when the goods, mentioned in the plaintiff's declaration, were purchased. *Judgment on the verdict.*