# STRAFFORD.

## JULY TERM, A. D. 1845.

### THE STATE *v.* HOWARD.

The court has the right, upon the impanneling of a jury, to permit an inquiry to be made of the persons returned to serve as jurors, whether they entertain any opinions which will prevent them from discharging their duty according to law. It is the duty of the court to see that a jury is impanneled capable of performing the duty of a jury. The court may therefore inquire of the jurors whether they have such conscientious scruples in regard to the right of the government to take the life of an individual, in the course of the administration of the laws, that they could not, in any case, whatever might be the evidence, render a verdict which might subject the prisoner to the loss of his life.

It is not a legal exception to a juror, that he has heard much respecting the case, if he has formed no opinion relating to the merits of it.

It is not a sufficient exception to the evidence of a confession by the defendant, in a criminal case, that he was urged to state where he was at a particular time, and to state it quick; there being no promises of favor, and no circumstances of intimidation.

Evidence of confessions obtained by the hope of favor, or by the fear of punishment, is inadmissible. The evidence is rejected because the inducements may have led to a false statement, and the confession is not therefore entitled to credit.

Whether a confession, made after the magistrate who issued the warrant had said to the prisoner that he "had better tell the truth," is admissible in evidence, *quere.*

If a confession is made by a prisoner, under such inducements of hope or fear as to exclude it, a subsequent declaration to the same effect, if made after the inducement has ceased to operate, and under circumstances which show that it could have no connection with the hopes or fears which had before existed, is admissible as evidence.

After the introduction of the testimony has commenced, the defendant cannot require the trial to be suspended, upon evidence that some of the jury had, before they were sworn, expressed the opinion that he was guilty.

Upon a motion for a new trial, on the ground that some of the jurors had expressed opinions unfavorable to the defendant, before the jury was impanneled, the testimony of the jurors is admissible, not only in denial of the language imputed to them, but to other circumstances tending to show that they had no bias.

State v. Howard.

Challenges of jurors are either principal causes of challenge, or challenges to the favor.

A principal challenge is grounded on such a manifest presumption of partiality, that, if the fact alleged be found to be true, it unquestionably sets aside the juror, because the fact shown leads to a presumption of partiality not to be rebutted.

A challenge to the favor leaves the question, whether the juror stands indifferent, to be determined upon evidence adduced for that purpose; the evidence adduced in support of the challenge leading to no presumption which may not be overcome by other evidence.

The fact that all challenges are here determined by the court, does not destroy the distinction between principal challenges and challenges to the favor. Upon a principal cause of challenge, the court have only to inquire into the truth of the facts alleged; upon a challenge to the favor the court are to determine whether the juror stands indifferent.

The fact that a juror has expressed an opinion respecting a cause, before he was summoned, is not necessarily a ground of principal challenge; but if the evidence adduced shows also malice, ill-will, interest, or a fixed opinion, or determination, this raises a legal presumption against the indifference of the juror. In other cases the court, in its discretion, may inquire under what circumstances the opinion was expressed; and upon such inquiry determine whether the juror stands indifferent. If unexplained, the expression of an opinion is sufficient to set him aside.

Upon a motion for a new trial, upon evidence which shows that the defendant had cause of challenge to the favor only, which he did not take advantage of, because he had no knowledge of the facts; there having been no mis-trial; the defendant is not entitled to a new trial, unless upon all the evidence then before the court it appears that some of the jurors did not stand indifferent. Even if the evidence offered in support of a motion for a new trial shows that the defendant had principal cause of challenge, if it had been made before the juror was sworn, and that his failure to challenge at the time was owing to his ignorance of the facts; there having been no mis-trial, and no error in the proceedings, the defendant is not entitled to a new trial, unless it appear that injustice may have been done by the verdict.

New trials are granted in all criminal cases, upon motion of the defendant, where there has been an error in the trial.

INDICTMENT, for the murder of Phebe Hanson, at Rochester, on the 19th of September, 1843.

The defendant was tried at the August term, 1844, and the jury failed to agree.

State *v.* Howard.

The second trial was commenced on Monday of the second week of January term, 1845.

Upon the calling of the jurors the attorney-general moved the court that they might severally be inquired of whether they had conscientious scruples respecting capital punishment; and the court thereupon ordered the following question to be put to them : " Have you such conscientious scruples in regard to the right of government to take the life of an individual, in the course of the administration of the laws, that you could not, in any case, whatever might be the evidence, render a verdict which might subject the prisoner to loss of life ?"

The defendant objected, that the government had no right to make such an inquiry.    Two of the persons returned to serve as jurors answered in the affirmative, and were not sworn.    The panel having been exhausted by reason of challenges on the part of the defendant, new *venires* were issued to the towns, and the persons returned having all been called, without completing the jury, *venires* were again issued.    These returns having exhausted some of the jury-boxes, and the number of the jury being still incomplete, the court ordered a return *de talibus circumstantibus*, and a second return of a like character was ordered before a jury was impannelled.

Some of the jurors, on inquiry by the defendant's counsel, answered that they had heard considerable said respecting the case ; and being objected to for that reason by the defendant, the court ordered that they should be passed ; but at a subsequent stage of the case, after more than one hundred and fifty jurors had been called, without completing the jury, the court ruled that it was not a sufficient legal objection to a juror, that he had heard about the case ; and others having answered in the same way, the court refused to set them aside for that reason, they declaring that they were not aware that they had formed any opinion, nor were sensible of any bias.    To this the defendant excepted.

All the jurors were asked by the defendant's counsel, whether they had formed any opinion in relation to the case, and severally declared that they had not, or that they did not recollect that they had, or thought that they had not.

Three days having been consumed in impanneling the jury, the introduction of the testimony was commenced on Thursday. On the Monday following, the defendant's counsel objected to proceeding further, and exhibited a letter, received on Saturday in the forenoon, setting forth that Lewis Cook, one of the jurors, had several times expressed an opinion upon the guilt of the defendant, before the trial, and they offered to prove the fact. After the verdict, the defendant proposed to show that Lewis Cook, and others of the jury, had formed and expressed opinions of the prisoner's guilt, before the trial.

Upon the trial, it appeared in evidence that after the defendant was arrested, and in custody of the deputy sheriff, Mr. Kimball, the magistrate before whom he was subsequently brought, and who issued one of the warrants for his arrest, being present, the defendant was asked where he was yesterday, (the day of the murder), to which he answered he was in a good many places. Kimball then said to him, "We know Phebe Hanson has been murdered;" and there was .evidence that he added, "we are satisfied that you did it," or some remark to that effect; and he then proceeded to say, in substance, "We want you to give an account of yourself from seven o'clock in the morning, until nine in the evening; tell it quick." The defendant answered, "I suppose I was at Meader-borough"; (the district in Rochester where the murder took place.) He was next asked, "Where, there?" To which he replied, "At Mr. Hanson's." The inquiry was then made, "At what Hanson's?" The answer was, "At Jacob Hanson's;" which was the place where the murder was committed. He was then asked if he committed

the murder; and John Meader, the magistrate who issued the warrant, added, "You had better tell the truth." The court admitted the evidence thus far, notwithstanding the objections of the defendant, but ruled out the answer made after this remark.    After he had answered he was told by one of those present that he would probably be hung, and by another he was cautioned as to confessions.

On the same day he was told by the magistrate before whom he was brought, that he was entitled to counsel, and that if he had counsel they would advise him to plead not guilty ; and after reading the warrant, the magistrate told him he had better say not guilty. The court rejected the evidence of what he said in answer. After he made his reply, the magistrate told him he would record the plea of not guilty.

There was evidence that on the day of the murder one ten dollar bill of the Dover bank, three five dollar bills, and one two dollar bill of the Rochester bank, two silver dollars, not alike, and a large number of cents, a knife, and a piece of tobacco, were stolen from the house of Jacob Hanson, where the murder was committed.

After his examination, at Rochester, the defendant was carried to Dover jail. On the way there he stopped with those who had him in custody, at the house where he had boarded, went a short distance into the pasture, by the fence, and picked up a wallet which contained a knife, thirty-six cents, a half-dime, and a piece of tobacco. There was evidence that he gave up the cents and knife, and that he claimed the wallet and half-dime, and requested that he might have the tobacco ; but his further declarations were excluded. To the admission of the evidence that he made this claim and request, the defendant's counsel objected. The knife was identified by Jacob Hanson as the one stolen from his house on the day of the murder, and one of the cents, also.

On arriving at Dover, Mr. Hurd, the sheriff of the

county, who was known to the prisoner, was told, in his hearing, that he had confessed, and answered that he had better take care how he confessed, ( or what he confessed ), that it might ( or would ) be the worse for him. He was then taken, at his own request, to a stable, to which he had resorted in the morning after his arrest, and he there pointed to a hole in a partition between the stalls, from which a wallet was then taken, containing a ten dollar bill of the Dover bank, three five dollar bills and a two dollar bill of the Rochester bank, a Mexican dollar, and a Spanish milled dollar. There was evidence that he at that time claimed the wallet. To the introduction of this evidence the defendant objected, but it was admitted, his further declarations not being proved. He was then committed to prison.

The Attorney-General proposed· to prove his declarations after he had been in prison a month, part of the time in irons, on the ground that any hope arising from his having been told prior to his being brought before the magistrate, that he had better tell the truth, must, under all these circumstances, have been removed from his mind ; and the court, having evidence that the declaration was not obtained by any inducements held out, and being of opinion that any influence which might have been created, must, under the circumstances in evidence, have been removed, admitted the testimony, the defendant objecting. These declarations consisted of a statement that he killed the deceased, that he did it for her money, a description of the manner in which the deed was done, and a declaration that he wished he had not told where the money was, for if he had not they could not have proved it against him.

The jury convicted the defendant of murder in the first degree, and he moved for a new trial. The four judges who were on the bench during the trial certified that they were satisfied with the verdict.

State *v.* Howard.

At this term, the defendant further moved for a new trial, on account of newly discovered evidence, and introduced the depositions of several witnesses to show that four of the jurors had expressed an opinion, before the last term, that the defendant was guilty, and ought to be hung. The affidavits of these jurors were introduced by the State, and each testified that he had no recollection of having expressed such an opinion; that he had, in fact, formed no opinion, and had no bias.

It appeared from the affidavits that three of them were, in the first instance, in favor of returning a verdict of murder in the second degree, and that one of them was the last to yield, and concur in the verdict which was rendered.

The defendant excepted to the evidence of the jurors, and especially to the statement of what occurred in the jury-room.

*James Bell,* for the defendant. A new trial is moved; (1) for errors in the former trial; (2) on account of matter discovered since.

It was erroneous to permit the Attorney-General to put the questions to the jury. 16 Pick. 153, *Commonwealth* v. *Buzzell.*

We hold the rule to be, that subsequent confessions are not admissible, unless the prisoner was told that his prior confessions were not evidence against him. Ros. Crim. Ev. 31; 9 Pick. 507, *Commonwealth* v. *Knapp;* S. C., 10 Pick. 490.

In principal causes of challenge, the juror is challenged peremptorily. This is recognized by Ch. J. *Marshall,* in *Burr's Trial,* and in *People* v. *Mather,* 4 Wend. 229. The principle thus laid down is, that it is the class of persons who take up opinions lightly, that is most objectionable.

*Walker,* Attorney-General, for the State, cited 1 City

State *v.* Howard.

Hall Recorder 24, *Mary Riley's Case;* 6 id. 71, *Mulligan &*
*Wishman's Case;* 8 Johns. 445, *Durell* v. *Mosher;* 3 Greenl.
204, *Taylor* v. *Greely;* 5 Mass. 71, 79, *Borden* v. *Borden;*
3 Scam. (Ill.) 77, *Smith* v. *Eames;* id. 83, *Gardner* v.
*People.*

*Christie,* in reply. If there was a good cause of chal-
lenge at the time of trial, the court should set aside the
verdict. 7 Bac. Abr. 661; Howe's Prac. 246; 7 Mod. 54,
*Anon.* It is a good general rule that the prisoner is not
considered to waive any right. 18 Johns. 218, *People* v.
*McRay.* The City Hall Recorder referred to is not au-
thoritative. In the case of *Smith* v. *Eames* the court held
a juror who had expressed a decided opinion to be dis-
qualified.

PARKER, C. J. The first exception was settled substan-
tially in the case of *Pierce* v. *The State,* 13 N. H. Rep.
556. We have no doubt of the right of the court and
the corresponding duty of the court to permit an inquiry
to be made whether persons, returned to serve as jurors,
are capable of discharging (and, we might add, willing to
discharge) the duty which the law imposes upon all
jurors, under the sanction of a solemn oath. If we
should find, upon such an inquiry, that any juror was
determined to disregard his duty and violate his oath,
it would be clear that he was unfit to sit in the jury-box;
and if, instead of a determined disregard of his duty, he
imagines that he is conscientiously opposed to the dis-
charge of that duty, and therefore cannot perform it, the
mischief which would be done to the administration of
justice is the same as if he was determined wantonly to
disregard it. His motive may be better, but his con-
science, or what he imagines to be such, which in some
instances is perhaps but another name for his will, cannot
be set in opposition to the law of the land, at the same

time that he is intrusted by that law with the enforcement of the law, and engages, under the most solemn sanction known to our law and to our religion, that he will faithfully perform the service required of him. There is no statute provision upon the subject, perhaps because the legislature did not originally imagine such a case could occur, and, when it did occur, it was found that legislation was unnecessary. Various cases may be put, showing that it is the duty of the court, aside from any statute provision, to see that a jury is impanneled capable of performing the duty of a jury. See 13 N. H. Rep. 556, before cited.

The statute of this State provides for the punishment of murder, and it divides that crime into two degrees; murder under certain specified circumstances being murder in the first degree, punishable with death ; and all other murder being murder in the second degree, and punishable by imprisonment. It is as much the bounden duty of the jury, if the facts clearly sustain a case of murder in the first degree, to find the prisoner guilty of murder in that degree, without regard to the punishment awarded to that species of crime, as it is to find the prisoner guilty of murder in the second degree, when the offence committed has not been attended with the circumstances which constitute murder in the first degree. The law has not intrusted the jury, or the consciences of particular jurors, with any discretion upon this point.

The next exception relates to the ruling of the court, that it was not a sufficient legal objection to a juror that he had heard about the case, if he had formed no opinion and was sensible of no bias. This ruling was made after other jurors, who had answered to the same effect, had been passed by, without any determination upon the sufficiency of the objection.

We are entirely clear that this forms no legal exception to a juror. There is nothing in the statute which indi-

cates that it is a cause of challenge to a juror that he " had heard about the case."

In order not only to secure, as far as possible, a jury without bias, but one which even the prisoner should be satisfied stood impartial, the court has, in several instances, where the juror, upon his examination, said that he had heard much said respecting the case, ordered that he should be passed by; not because that was ground of challenge, but to give the prisoner the greatest possible chance of an impartial jury. That is what was done in this case, and the fact that some jurors had been passed by in this way did not preclude the court from subsequently ruling that it was not a cause of challenge. If this position needed support it might be found in the opinion of *Williams,* J., 3 Vt. 577, *Boardman* v. *Wood.* If the court erred it was in admitting the objections of the defendant to too great an extent, of which he cannot complain.

Upon the trial, the defendant excepted to the admission of certain evidence, tending to show his acts and confessions.

It appeared that, soon after the arrest of the defendant, he was asked where he was the day before, and told that they wanted him to give an account of himself through the day, and to tell it quick; and, on his giving a general answer that he supposed he was at Meaderborough, he was asked, "where there?" and, when he replied, "at Mr. Hanson's," the inquiry was, "what Hanson's?" It is undoubtedly true that the defendant was not only pressed to state particularly where he was the day previous, but that he was urged to make his statement expeditiously. The design seems to have been to induce him to make his statement without taking time to consider, and frame one for the occasion. We can make no more of it, upon the evidence. There is nothing to show that threats were used; that he might have been induced to make a false statement through fear; and we fail to discover in these

circumstances any thing to justify the court in ruling out the evidence. It may be that the defendant was thereby induced to make a confession which he would not have made if he had taken more time to consider the matter, and to frame a statement. But this is not enough. It is not a sufficient exception to the admission of a confession that the prisoner was urged to make a statement, with no promises of favor and no circumstances of intimidation. It is not within the ingenuity of counsel to point out any thing in the circumstances which should have led the defendant to state that he was at Meaderborough, if he was not there, nor to say that he was at Jacob Hanson's, if he had not been at that place.

The next question was, whether he committed the murder? and the magistrate who issued the warrant then said to him that he " had better tell the truth." For this reason the court ruled out the defendant's answer. The evidence having been thus rejected, there is no exception to this ruling, and it does not come before us directly for revision. As, however, evidence was subsequently admitted upon the ground that any supposed influence of hope upon the mind of the defendant, from this declaration, must have been dispelled by the intervening circumstances, we take occasion to say, that while the ruling has certainly very respectable authority to support it, we are by no means satisfied that judges, in their anxiety to preserve all the rights of the accused, have not gone farther in excluding confessions than the principle required them to do. It is unquestionably true, that there have been some lamentable convictions based upon the confessions of the accused, which suggest the necessity of great caution in weighing such confessions, and in considering how far they are supported or rendered doubtful by other evidence. But the entire exclusion of the evidence is quite another thing. The principle of admission and exclusion is well settled, and founded upon a most satisfactory basis.

Confessions, obtained by the hope of favor, or by fear of punishment, are inadmissible. It is the hope of escape from temporal punishment which excludes, and the hope must be derived from the inducements. Jebb's C. C. 15, *The King* v. *Gibney;* 1 Moody's C. C. 186, *Rex* v. *Gibham.* The evidence is rejected, because the inducements may have led to a false statement, and the confession is therefore not entitled to credit; and not because the public faith is pledged by means of the promise. 1 Leach 263, *Rex* v. *Warickshall.* It is in the application of this principle that the difficulty lies; that is to say, in determining whether hopes have been held out, or fears excited, in the particular case. In the present instance the defendant was told that he had better tell the truth. It has been supposed that a party accused might, from such a declaration, understand that it would be better for him to confess himself guilty. Russ. & Ryan 153, *Rex* v. *Row.* But why should any one so understand, if he was in fact innocent? Why should he infer from such a declaration that it would be better to tell a lie, which admitted his guilt, than to tell the truth, which declared his innocence? The declaration of itself is no more than this: Do not involve yourself in a falsehood. Tell the truth, whichever way it may be. Or, if it is understood as going one step farther, and meaning, It will be better for you to do so,—the favor to be hoped for is, from telling the truth, and not from making a confession of guilt, unless the confession is true, and in this view the question would seem to be, whether, if a confession is drawn out by such a declaration, the government ought not to forbear to prosecute, or whether the executive ought to extend some clemency, rather than a question whether such inducements had been held out that the defendant might have made a false confession, and the evidence be therefore excluded as inadmissible. The confession was admitted after such a declaration, in *Rex* v. *Court,* 7 C. & P. 486. It seems it would have been

State *v.* Howard.

excluded in *Rex* v. *Row*, cited above, where the confession was made after the prisoner had been advised "to tell the truth and consider his family," if the advice had been given by any one connected with the prosecution. It was there considered as advice to confess himself guilty. So in *Rex* v. *Enoch & Pulley*, where the female prisoner was told that "she had better tell the truth, or it would lie upon her, and the man would go free." But we do not intend to pass upon this question at this time. Our object is to show how slight, to say the most, is the probability that a declaration of this kind excites any hopes that should cast a suspicion upon the truth of the confession which follows it; and this has a legitimate influence in the consideration of the subsequent testimony.

If a confession is made by a prisoner under such inducements of hope or fear as exclude it, a subsequent declaration to the same effect, if made after the inducement must have ceased to operate, and under circumstances which show that it could have had no connection with the hopes or fears which had been excited, is admissible in evidence. 5 C. & P. 318, *Rex* v. *Richards;* Jebb's C. C. 157, *Rex* v. *Bryan;* 2 East P. C. 658; 10 Pick. 490, *Commonwealth* v. *Knapp;* 4 C. & P. 221, *Rex* v. *Clewes;* 6 C. & P. 404, *Rex* v. *Howes.* There are authorities the other way. 5 C. & P. 535, *Rex* v. *Cooper;* 9 Pick. 507, *Commonwealth* v. *Knapp.* But the principle seems to be established. Otherwise, inducements being once held out, all the subsequent declarations of the prisoner would necessarily be excluded, under whatever circumstances they might be made. He might even boast of his crime, with the assurance that his exultant declarations could not be used against him on his trial. The nature and character of the inducement which was held out may therefore become material; and in some cases the question, whether the influence had ceased to operate prior to the subsequent declarations, may be one of some difficulty, in which

case the prisoner is entitled to the benefit of any reasonable doubt which may exist.

We have no difficulty, however, on this point in the present case. The hope here — assuming that hope was excited by the declaration of the magistrate that he had better tell the truth — must have been of the slightest possible character, and the circumstances which intervened between that time and the period when he made the confession which was admitted, can leave no shadow of doubt whether the last confession was made through some lingering belief, arising from the declaration of the magistrate, that if he still continued to confess, he might find favor. The evidence is very strong upon this point. Immediately after his answer which was ruled out, he was told by one of those present that he would probably be hung, and by another cautioned against confessing. Upon his examination, the same day, the magistrate advised him to plead not guilty; and notwithstanding this was followed by a voluntary statement of the defendant — which was ruled out because of the possible previous influence — the magistrate told him he would record the plea of not guilty. On the examination he was ordered to be committed to jail. A statement which he made on the way was excluded, because he had thus been told that he had better tell the truth. On arriving at the jail the sheriff said, in his hearing, that he had better take care how he confessed (or what he confessed), that it might (or would) be the worse for him. He was then committed to prison, and after he had been imprisoned a month — a part of the time with the extraordinary precaution of irons, to prevent the possibility of escape — with no inducements held out to him, he made an additional declaration, which the court admitted in evidence, upon the ground that under the circumstances any hope excited in the first instance, by his being told that he had better tell the truth, must have been entirely extinguished.

We can·hardly imagine a stronger case for such a con-
clusion. If the defendant's declaration, made under such
circumstances, is not admissible, because of the previous
inducements, no case can well exist in which, after any
inducements, a confession is admissible ; and the princi-
ple, founded on the supposition that the influence of the
inducements may have ceased, might as well be surren-
dered at once. We have no hesitation in sustaining the
ruling. If any thing could have extinguished the faint
glimmer of hope which might possibly have existed in the
first instance, these circumstances must have been effect-
ual for that purpose.

In considering the probable reason for this last confes-
sion, we must not lay out of the case the other circum-
stances which intervened between that and the first.
There was evidence that certain property described in the
case was stolen from the house where the murder was
committed, on the same day.—After the defendant's ex-
amination, and while he was on his way to the jail, he
went into a pasture and picked up a wallet, containing a
knife, several pieces of coin, and some tobacco. He
claimed the wallet and one of the pieces of money, and
requested to have the tobacco. His farther declarations
were excluded. The knife and one of the pieces of coin
were identified as part of the property stolen from the
house of Hanson on the day of the murder.—And after he
had heard the sheriff say that he had better take care how
or what he confessed, as it might be the worse for him, he
was, at his request, taken to a stable where he had been
on the morning of the arrest, and there he pointed out a
place from which another wallet was then taken, contain-
ing other money, answering the description of a part of
the money stolen, and he at that time claimed the wallet.
His further statement, made at this time, was also ex-
cluded on account of the previous declaration, that he
had better tell the truth. But the testimony admitted

was competent to show that he had the stolen property in his possession, and, in the absence of explanation, to lead very conclusively to the belief that he committed the murder. 2 East P. C. 658; 1 Leach Cr. L. (4th ed.) 263, *Rex* v. *Warickshall, and cases cited in the note.*

Under such circumstances he might well have supposed that a farther confession was not likely to affect the case either way, and for that reason have been ready to make the statement.

The remaining questions arise out of the defendant's application for a new trial, founded upon evidence tending to show that some of the jurors had expressed opinions of his guilt before the trial. After the jury were impanneled, and three days had been consumed in the introduction of testimony, the defendant objected to proceeding farther with the trial, and proposed to prove that Lewis Cook, and others of the jurors, had, before the commencement of the trial, expressed opinions that the defendant was guilty.

The court could not be required, at that stage of the proceedings, to stop the case, and enter into the question whether a juror stood indifferent when he was sworn. If the prisoner might have introduced evidence in support of such a motion, the government must have been allowed to controvert that evidence, and the trial be suspended until the question was determined. And if the jury could have been discharged on a finding that one of them did not stand indifferent, the trial might have been resumed with a new jury,—if one could have been impanneled,— only to encounter a similar objection with a like result. It was proper that the information should be given to the court, as the basis of a future motion, as was done; 2 N. H. Rep. 351, *Rollins* v. *Ames ;* but the objection to proceeding with the trial, was rightly overruled.

A motion is now made for a new trial, founded upon affidavits tending to show that Cook and three other jurors had thus expressed opinions before the trial.

State v. Howard.

This evidence tends to show that Cook, some two months before the trial, said, at different times, that he had no doubt that the defendant killed Phebe Hanson, and that he ought to be hung without judge or jury. The attorney-general furnishes the affidavit of Cook, in which he states that he does not recollect ever having formed or expressed an opinion prior to the trial; that he had no prejudice against the defendant, never saw him to know him, and had heard him spoken of but a few times before the trial. This juror further testifies, that he was in favor of rendering a verdict of murder in the second degree.

The counsel for the defendant, at the time of taking the affidavit, objected to the testimony of the juror respecting the verdict he was in favor of rendering, on the ground that the State could not be permitted to prove what took place in the jury-room; but we are of opinion that the objection cannot be maintained. It is settled that jurors may be examined, when their verdict is brought in question. 6 N. H. Rep. 361, *State* v. *Hascall*, and authorities there cited. They were so examined without objection in the case of *State* v. *Prescott*, 7 N. H. Rep. 293 – 295. And although it is not competent for jurors to testify that they misapprehended the instructions of the court (4 N. H. Rep. 117, *Tyler* v. *Stevens*), or that they were not influenced by a particular circumstance ( as, for instance, by certain papers before them), in finding their verdict, 5 N. H. Rep. 93, *Page* v. *Wheeler*, or to the motives and inducements on which they may have joined in a verdict, 16 N. H. Rep. 361; 14 Mass. 245, *Bridge* v. *Eggleston*, we perceive no sufficient reason, notwithstanding the ruling in *McCorkle* v. *Binns*, 5 Binney 344 ( where it was held that the juror may be examined to show that he did not make the declaration imputed to him, but cannot be questioned respecting the proceedings of the jury), why they should be excluded from stating, as a matter of fact, the verdict which they originally proposed to render.

This stands like any other simple matter of fact, and is of a character that it may be readily contested, if doubted. It is competent for a juror to show that he had not deliberately expressed the opinion attributed to him; and this testimony respecting the verdict he proposed to his fellows to render, had a direct bearing upon the question. It is not in impeachment, but in support of the verdict. 15 Johns. 317, *Jackson* v. *Dickinson.*

The evidence also tends to show that Miles Buzzell, another of the jurors, said, a week or ten days after the murder, that if he was on the jury he would hang him (the defendant), certainly; and that at other times he said that he ought to be hung, and that if he was on the jury he would hang him. This juror denies that he ever said, to any one, that if he was on the jury he would hang the defendant, and testifies that he is not conscious that at the time when he was sworn he had formed any opinion of his guilt or innocence. He also, it appears, was in the first instance in favor of returning a verdict of murder in the second degree.

Evidence is offered, also, to show similar declarations by Enoch Ham, another of the jurors. This juror avers that he has no recollection of using any such expressions, and thinks he never did; if he did, it was not meaning any hurt, and in trifling ·conversation; that he had not formed any opinion of the guilt or innocence of the defendant before the trial; that he had no bias or prejudice against him; that he was in favor of rendering a verdict of murder in the second degree, and that he was the last one who consented to render a verdict of murder in the first degree.

There is further testimony to show that Joseph Daniels, another juryman, said that he thought the defendant was guilty, and that he ought to be hung. He, like the others, swears that he has no recollection of using any such language; thinks he did not; does not recollect

that he formed any opinion, and is not conscious that he had any bias.

If it be assumed that all these jurors uttered the words attributed to them, it is hardly necessary to say that they are far from showing conclusively that the jurors did not, in fact, stand indifferent. We do not regard the testimony, standing alone, as impeaching the honesty of the jurors. It appeared from the examinations, made at the time of impanneling the jury, that the case had been a subject of conversation throughout all the county.

It was a matter of course, under the circumstances attending it, that it should be so; and it is but natural that expressions like most of those attributed to these jurors should be made, not only without any settled opinions upon the subject, but merely as a matter of conversation, forgotten soon afterwards.

The fact that three out of four of these very jurors were in favor of the most favorable verdict against the prisoner, and that one of them, whose expressions, as proved, were quite as strong as any of the four, was the last to yield his wish to render such a verdict, and to agree to the verdict which was rendered, serves to show most conclusively that such expressions, in a casual conversation, standing unsupported by any thing to show ill-feeling, or a fixed belief, do not indicate, with any great degree of force, any settled opinion in reference to the actual guilt of the defendant. Still, we have no doubt that if the evidence now presented by the defendant respecting the expressions of opinion by those jurors, had been offered in support of a challenge, when the jury was impanneled, it would have been regarded as sufficient, and the jurors set aside without farther inquiry, unless the proof of the language attributed to the juror should be distinctly contradicted. How, otherwise, could it have been ascertained, at that time, that the juror stood indifferent? Such evidence was held to be sufficient to exclude a

juror in the trial of *Peter Cook*, 13. How. State Tr., 137, 138.

At the time when the jury was impanneled, the court could not have had the evidence derived from the opinions of these jurors, upon the consultation of the jury, to show what slight weight should, in many cases, be attached to similar expressions in such a case. But the fact that the jurors were set aside would not have been conclusive evidence to show that the defendant had a right to have the jurors rejected without further scrutiny, if evidence could be offered to show that they stood indifferent. The court, so long as there has been no difficulty in procuring a jury, have been very much inclined to permit a prisoner's objection to avail, giving him practically a selection of those in attendance; and this *in favorem vitæ,* has doubtless been carried further than the strict right of the prisoner entitled him; of which this case is an instance. The practice in this State is probably not singular in this particular. *Archbold* says: "It is not, in general, required that the party challenging shall immediately declare his cause of challenge, unless there be not a sufficient number of jurors remaining in the panel," &c. 1 Archb. Prac. 207; 3 Vt. 577, cited above.

But the case, as now presented before us, has led to inquiries whether the mere expression of an opinion by a juror, in common conversation, without any thing to show ill-will, hostility, or a fixed determination or belief, is such a legal ground of challenge, under our statute, that the court are to inquire no farther; and whether, even if there were such cause of challenge, the juror, having passed unchallenged, and the fact being shown after the trial is in progress, the defendant is entitled, for such reason, to a new trial, as a matter of right.

Challenges are exceptions to jurors returned, when about to be impanneled for the trial of the case, and are of various descriptions. Challenges to the array allege an objection to the whole panel, and, if successful, set

State *v.* Howard.

aside all the jurors returned. Challenges to the polls are objections to individual jurors, operating, if successful, as a rejection of a particular juror against whom the objection is taken. Whether to the array, or to the polls, challenges are divided into principal causes of challenge, and challenges to the favor. Bac. Abr., Juries, E, 1.

A principal challenge is grounded on such a manifest presumption of partiality, that if the fact alleged be proved to be true, it unquestionably sets aside the array or the juror, as the case may be, because the fact shown leads to a presumption of partiality, not to be rebutted; and this may arise either from near relationship, or interest, or from the expression of an opinion, if that expression indicate malice, or even a fixed belief. In such cases there is no occasion to try whether the juror stands indifferent.

But a challenge to the favor leaves the question whether the juror stands indifferent to the judgment of the triers — the evidence adduced in support of the challenge leading to no presumption which may not be overcome by other evidence. *Chitty* says of the challenge to the array: "It is either a principal challenge, or for favor, the former of which is founded on some manifest partiality, and is therefore decisive, while the grounds of the latter are less certain, and left to the determination of triers." 1 Chit. Crim. Law 437 [536]. And speaking of causes of challenge for favor, he says: "As these circumstances do not necessarily imply partiality, they are no ground of principal challenge." In this State triers are not appointed, according to the mode of procedure at the common law; all challenges, by uniform practice, being determined by the court. 2 N. H. Rep. 350, *Rollins* v. *Ames.* But this fact seems to furnish no ground for disregarding the distinction between the principal causes of challenge, and challenges to the favor.

In the case of a principal challenge, the court, like the

courts in England, have only to inquire into the truth of the fact alleged. If the truth of the fact be shown, the challenge is well taken, without any inquiry whether the juror stands indifferent. The law presumes partiality, although it may not exist in fact in the particular case. In the challenge to the favor, the court are to ascertain, not merely the truth of the fact upon which the challenge is founded, which raises no conclusive presumption of partiality, but, like the triers in England, they are to determine whether the juror stands indifferent. He may be a near neighbor and friend to one of the parties, or to the prosecutor, or related to one of the parties in a remote degree, or he may have heard rumors respecting the case, and have impressions about it, but he may stand indifferent notwithstanding.

There are some authorities that the expression of an opinion by a juror respecting the matter of right, is a principal ground of challenge. It is so said in Bac. Abr., Juries, E, 5; and so in the case Blake v. Mills, 1 Johns. 316, which, being a certiorari from a justice's court, seems not to have been very deeply considered. Coke, who is referred to by Bacon, does not say so, but, on the contrary, speaking of challenges propter affectum, remarks: "It is said that a principal challenge is express favor or express malice." Co. Litt. 157, a.

The weight of authority appears to be that the expression of opinion, unless under circumstances indicating malice or ill-will, or perhaps a fixed determination, is only a ground of challenge to the favor. In fact, it seems formerly not to have been regarded as a principal ground of challenge to a juror, that he had declared an opinion from his knowledge of the case. Thus in the section of Bacon's Abridgement last cited, it is said: "It is a good cause of challenge that a juror hath a claim to the forfeiture to be caused by the conviction, or that he hath declared his opinion beforehand; yet this hath been

adjudged to be no cause of challenge when it hath appeared to proceed, not from any ill-will, but from a knowledge of the case;" for which 2 Hawk. P. C., ch. 43, sec. 28, is cited, in which the matter is so stated.

Mr. *Chitty*, speaking of principal challenges, says : " In general, the causes of this nature which would justify a challenge to the array, on the ground of the presumed partiality of the sheriff, will be sufficient exceptions to an individual juror." And he adds : "An actual partiality may also be shown, as well as a supposed bias. Thus, if a juryman has expressed his wishes as to the result of the trial, or his opinion of the guilt or innocence of the defendant, with a malicious intention, on evidence of these facts he will be set aside." 1 Chit. Crim. Law 441, 442 [542]; Jacob's Law Dic., Jury, I; Rolle's Abr., Trial, 655, pl. 7, 8. An *anonymous case*, 1 Salk. 153, does not seem to conflict with this view, for although it is there said that it is a good cause of challenge that the juryman had said the defendant was guilty, or would be hanged, the rest of the report shows that the allegation was, that if the juror had said this, it was under circumstances which would charge him with misdemeanor, or misbehavior, and for that reason he would not be required to serve. The marginal note is, that " a juror may be examined to any matter criminal, or infamous, in order to challenge." It is true that Lord Chief Justice *Treby* very persistently contended, in *Cook's Case*, before cited, that any such expression of opinion that a prisoner was guilty, even before the juror was summoned, was " at least a scandalous misbehavior." But that cannot be maintained.

Mr. *Archbold* says : " The challenge to the polls for favor, is of the same nature with the principal challenge *propter affectum*, but of an inferior degree. The general rule of law is, that the juror shall be indifferent; and if it appear probable that he is not so, this may be made the

subject of challenge, either principal or to the favor, according to the degree of probability of his being biased. The cause of a principal challenge to the polls, we have seen, is such matter as carries with it, *primâ facie*, evident marks of suspicion either of malice or favor. But when, from circumstances, it appears probable that a juror may be biased in favor of or against either party, and yet such circumstances do not amount to matter for a principal challenge, it may then be made a challenge to the favor." Archb. Prac. 206.

In fact our statute seems to imply that the mere expression of opinion may not furnish cause for setting aside the juror without farther inquiry, for although it provides that the juror may be inquired of "whether he has, directly or indirectly, given his opinion, or has formed an opinion, or is sensible of any prejudice in the cause," it does not provide that such an expression of opinion shall be a principal cause of challenge, or a conclusive reason for rejecting the juror, but enacts, "that if it appears that any juror does not stand indifferent in any cause, he shall be set aside on that trial." Rev. Stat., chap. 176, sec. 21.

That the usual practice of the court has been to allow an expression of opinion as a cause of challenge, without farther inquiry, has very little tendency to give a construction to the statute, for the reasons already stated; more especially when it appears that the court have gone still farther, and passed jurors merely because they had heard much said respecting the case, which no one ever imagined was of itself a cause of challenge.

This examination leads to the conclusion that the fact that a juror has expressed an opinion respecting the case, before he was summoned, is not necessarily a ground of principal challenge; or, in other words, a cause of challenge which requires the court, without farther inquiry, to set aside the juror. But, if the evidence adduced to

show the expression of opinion shows also malice, ill-will, interest, or a fixed opinion, or determination, that raises a legal presumption against the indifferency of the juror.

The court may, in its discretion, inquire under what circumstances the opinion was expressed, and, upon such inquiry, determine whether the opinion was merely a casual remark, which could have very little tendency to show bias, and which might be entirely overcome by other circumstances, so as to leave no doubt that the juror stands indifferent. If it should appear, on such inquiry, that the expression of opinion indicated malice, that would furnish conclusive evidence that the juror did not stand indifferent. Some of the language in the cases in New-York might lead to a supposition that it was a principal cause of challenge where there was no dispute about the facts, and that a challenge to the favor was to be submitted to triers only where the evidence relating to the expression of opinion was contradictory; but this seems not to be the criterion.

On this view of the case, the defendant is not shown to have had legal cause for principal challenge against the jurors, to whom he now excepts as having expressed opinions before the trial; and it follows, as a consequence, that he is not now entitled to a new trial, unless, upon the examination, at this time, of the circumstances shown in evidence, it appears that the jurors did not stand indifferent in the cause when they were impannelcd.

The evidence before us does not serve to show that these jurors did not stand indifferent. Still less is there any thing indicating that they had any fixed belief, or any determination to find the defendant guilty; and the defendant, therefore, has not, in this view of the question, and on this evidence, entitled himself to have the verdict set aside. 3 Scam. 76, 79, *Smith* v. *Eames;* id. 84, *Gardner* v. *People.*

But we do not rest our opinion on this view alone.

If it were supposed that the evidence now adduced by the defendant, had it been offered in support of a challenge of the jurors before they were sworn, would, have been rightly admitted as a principal challenge, and the jurors excluded from the panel without further inquiry, it by no means follows that it is a sufficient reason for setting aside the verdict. The defendant did not exercise his right of challenge. Even if the reason of this failure to exercise his right was his ignorance of the existence of the facts which would have sustained the objection, he may not now be entitled to take the objection in another shape, after having had the chance of an acquittal.

The question now before us, stated in the most favorable terms for the defendant, is not whether there was good cause of challenge to some of the jurors, if he had had knowledge of the facts existing at that time, but whether, having had the benefit of all the safeguards interposed by the law in behalf of persons accused, to secure an impartial trial, he is now entitled to another trial, because he did not possess the knowledge of certain facts which were as open to him as to any one else, and which might have led him to interpose valid objections to some of the jurors; whether there are now sufficient reasons to justify the court in setting aside the verdict, and sending this case to — what it could never have, if the formation of an opinion was a conclusive ground of challenge — a new trial. With the limited extent of the county, and the great publicity which the atrocity of the murder in the first instance, and two trials, with a full publication of the evidence, have since given to it; and, considering the difficulty in obtaining a jury on the last trial, we may well conclude that there is no probability that twelve jurymen, qualified in other respects, could be found in the county who had not formed some opinion respecting the case. Sending the case to a new trial, and rejecting all persons who had formed an opinion, would be, in other

words, discharging the defendant. This is not a matter for us to consider, if he has not had a fair trial. But it is a reason, and a cogent one, why we should carefully consider the question of right, and not exercise any legal discretion upon the subject, except according to the strict rules of law.

Under such circumstances, there is no doubt that, according to the rules of the common law, as practiced in England, no new trial could be granted. In a capital case none is ever granted. If there has been an error in the trial, the prisoner is recommended by the court for a pardon, which is a matter of course upon such a recommendation; and so he is pardoned for an offence which, on account of the error in the proceedings, it has not been legally made to appear that he ever committed. 2 Sumn. 46, and authorities cited.

But such is not the practice in this State. New trials are granted in all criminal cases, upon motion of the defendant, where there has been an error in the trial, even in cases of murder; 7 N. H. Rep. 287, *State* v. *Prescott;* and this without further inquiry whether injustice has in fact been done. If the prisoner has not been lawfully tried, it would be gross injustice to render judgment upon the verdict, upon any opinion of the court that the result was right. The court in such case cannot entertain such an opinion.

But that is not this case. There has been no mis-trial. It appears that there was no error in the proceedings. The greatest possible pains were taken to secure to the defendant a most impartial trial. Not only all the jurors to whom he objected because they had formed an opinion, were set aside, but some merely because they had heard much said respecting the case. Nearly two hundred and fifty jurors were called, before the jury was impanneled. The rulings were, as we have seen, very guarded against the admission in evidence of the defendant's confessions.

Three of the four jurors to whom objection is now taken, are known to have been among those most favorable to the defendant. No exception has been suggested to the charge of the court. All the judges upon the bench during the trial certify that they were satisfied with the verdict. The case shows that they could not well have been dissatisfied with it. No other verdict than that which was rendered could have been returned, with a due regard by the jury to the oaths which they had taken. There could not be the smallest particle of doubt, upon the evidence, that the defendant killed the deceased, an inoffensive female, deliberately, by shooting her; going armed to the house for that purpose, if it should be necessary to the accomplishment of the robbery which he committed. An acquittal would have been an outrage which would have cast unmitigated reproach upon the administration of justice. A verdict of murder in the second degree would have been without law or evidence to warrant it; and could only have been the result of a feeling, on the part of the jury, adverse to capital punishment, of the expediency of which a jury is not to judge. The failure of the jury to agree upon the first trial, it is understood, was upon a disagreement whether the verdict should be of murder in the first degree or in the second. To send the case to a new trial, supposing one could be had, merely because the defendant failed to elicit from some of the jurors the fact that they had expressed opinions unfavorable to him—assuming that to be true, when it is hardly within the range of possibility that any such preconceived notions could have influenced the verdict—would tend to the encouragement of crime, rather than the promotion of justice and a sound administration of the law.

The authorities which have been examined do not shake the view which we have thus taken of the case. They are to some extent apparently conflicting with each

State *v.* Howard.

other, possibly from a failure to distinguish between a case of mis-trial and a case where the party had not exercised a right to challenge, to which he was entitled, from a lack of knowledge respecting the facts, and when his only title to relief was because he might thereby have had injustice done him. Some of them were because the previously expressed opinions of the jurors indicated that hostility or determination to find a verdict, which led to the belief that injustice might have been done. In some of them the objection to the juror was taken before the trial, and, according to the opinion of the court above, erroneously overruled. 6 Cow. 555, *ex-parte Vermilyea;* and see 2 Salk. 645, *Dent* v. *Hartford;* 9 Bing. 333, *Ramadge* v. *Ryan;* 22 Me. 198, *Studley* v. *Hall;* 2 Chip. 45, *Deming* v. *Hurlburt;* 4 Vt. 363, *French* v. *Smith;* 12 Vt. 619, *Atkinson* v. *Allen;* 1 Bay. 374, *State* v. *Hopkins;* Com. 601, *Wynn* v. *Bishop of Bangor;* 3 Dal. 517, *United States* v. *Fries;* 14 Mass. 206, *Jeffries* v. *Randall;* 1 Leigh 598, 617, *Jones' Case;* 9 Leigh 661, *Mailes' Case;* 11 Leigh 657, *Amistead* v. *The Commonwealth;* 7 Rob. (Va.) 735, *Heath* v. *The Commonwealth;* 7 Cowen 369, *People* v. *Vermilyea;* 1 Yeates 372, *Lessee of McClausland* v. *McClausland;* 7 Price 203, *Onions* v. *Naish;* 8 B. & C. 417, *Rex* v. *Sutton;* 5 Mass. 71, 79, *Borden* v. *Borden;* 2 Sumn. 45–62, 101, *United States* v. *Gilbert,* and cases cited.

If, in an action upon a promissory note, it should appear that there was no possible doubt that the defendant made the note upon a sufficient consideration, and that it still remained unpaid — his attempt to show payment having signally failed—it would hardly be deemed a good ground for sending the case to a new trial, that one of the jurors was of that degree of kin to the plaintiff as to have furnished principal ground of challenge on the part of the defendant, if he had been aware of the consanguinity. The same reason would hold good in a criminal case, where one of the jurors was under like circumstances of kin to the prosecutor.

Upon these considerations we are of opinion, not only that it is not our duty to set aside this verdict, but that it would be a violation of our duty should we assume such a discretion, or rather want of discretion, as to do so. If it is not our duty to grant a new trial in this case, it is not our right to grant a new trial.

*Judgment on the verdict.*