## THE STATE *vs.* PRESCOTT.

AFTER a conviction, in a capital case, the court has power to grant a new trial upon motion of the prisoner, if sufficient cause is shown.

The mere separation of jurors, empannelled to try a capital offence, from their fellows, without the attendance of an officer, although an irregularity, is not a sufficient cause for setting aside the verdict, if the court are satisfied that the prisoner has not sustained any injury from such separation.

But, where there has been an improper separation during the trial, if the verdict is against the prisoner, he is entitled to the benefit of a presumption that the irregularity has been prejudicial to him, and the burden of proof is upon the government, to show beyond a reasonable doubt that the prisoner has suffered no injury by reason of the separation. If the government fail in this, the verdict will be set aside.

INDICTMENT FOR MURDER. The prisoner was tried at the court of common pleas, September term, 1834, and having been found guilty, and his counsel having moved for a new trial, the questions arising upon that motion were reserved for the consideration of this court.

The facts, upon which the motion was founded, are sufficiently stated in the opinion of the court.

*Bartlett* and *Peaslee,* for the prisoner, cited 1 *Cowen's Rep.* 221, *Smith* vs. *Thompson & note;* 2 *Cowen,* 589, *Horton* vs. *Horton;* 5 *Cowen,* 283, *Oliver* vs. *The Trustees of the First Presbyterian Church in Springfield;* Ohio *Condensed Rep.* 466; 4 *Johns. Rep.* 294, *The People* vs. *Menay;* 18 *Johns.* 218, *The People* vs. *McKay;* 6 *Green. Rep.* 379, *Purinton* vs. *Humphreys;* 4 *Cowen,* 26, *The People* vs. *Douglass;* 7 *Cowen,* 562, *Branch* vs. *Fowler.*

*Sullivan,* Attorney General, and *Whipple,* County Solicitor, cited *Hale's P. C.* 295; 1 *Chitty's Rep.* 401, *The King* vs. *Woolf & a;* 1 *Connecticut Rep.* 401, *The State* vs. *Babcock;* 6 *Green.* 379; 7 *Wendell's Rep.* 423, *The People* vs. *Ransom;* 1 *Cowen,* 221.

PARKER, J., delivered the opinion of the court. No question of the right of the court to grant the prisoner a new trial, after a conviction in a capital case, has been raised in the argument, nor have the court any hesitation upon the subject. 17 *Mass. Rep.* 515, *The Commonwealth* vs. *Green.*

The provision in the 16th article of our Bill of Rights, that " no subject shall be liable to be tried after an acquittal, for the same crime or offence," implies that he may be again tried upon his own motion, after a conviction, if sufficient cause be shown.

The prisoner was entitled to a fair and impartial trial, according to the laws of the land; and, if in any respect this right has not been fully secured to him, God forbid that he should be sent to pray, of the mercy of the Executive, a pardon for an offence of which he has not been legally convicted.

The first ground upon which the prisoner's counsel move to set aside the verdict, is, that the jury repeatedly separated, in an improper manner, without leave of court, unattended by any sworn officer, and were within hearing of remarks made by others against the prisoner.

In civil cases it is not the practice to require the jury to be kept together until the case is committed to them by a charge from the court, and in criminal cases, for offences of lesser magnitude, it is usual to pursue a similar course.

In cases which may affect the life of the prisoner, or his liberty for life, a different rule prevails. From the commencement of the trial, until its final termination, the jury are placed in charge of an officer, or officers, unless it is otherwise ordered by consent of the accused and the counsel for the State.

The duty of the officer is prescribed in the oaths to be taken by him.

That administered upon the first adjournment after the commencement of the trial, is, in substance, " well and truly

' to keep the jury, and neither to speak to them himself, nor ' suffer any other person to speak to them, touching any ' matter relative to this trial." 1 *Chittys C. L.* [628,] 513.

That which is required to be taken upon the case being committed to the jury, is, to keep them in some convenient place until they shall have agreed upon a verdict; not to speak to them himself, nor suffer any other person to speak to them, except by order of court, or to ask if they are agreed, and not to suffer them to disperse until they shall have returned their verdict into court.

It is apparent from the first oath, that whenever it becomes necessary to adjourn during the trial of a case of such character, the jury are required to be kept in the custody of an officer, or officers, in such manner as shall prevent all communication with them on the subject matter of the trial.

The object is to secure the public justice from any interference arising from friends, or from popular favor to the prisoner: and to protect the prisoner himself from the hostility of his enemies, and the influence of popular prejudice against him.

The officer is not in the first instance required so to keep the jury that no person shall speak to them upon any subject; but he is to keep them in such manner as to be assured that no person whatever speaks to them, or, what is the same thing, speaks in their hearing, upon the matters pertaining to the trial. If this is not done it is clear that the requisitions of the law have not been observed.

If the officer permits the jury, or any of them, to depart from his custody, or superintendence, he cannot be said to ' keep' them. If they are permitted by him to go at large beyond his observation, he suffers them to be where they may be spoken to, and has himself, and of course can give, no assurance that they have not actually been spoken to relative to the subject matter of the trial.

The guards interposed by the law against the influence of friends and enemies, or popular favor and prejudice, are

in such case removed ; and if no bias is received from such sources, it will not be, as the law intends that it should be, because there has been no opportunity to attempt an undue influence.

That such a failure to keep the jury is an irregularity, admits, therefore, of no doubt.

Upon the question, What is to be the consequence of such an irregularity, there has been some diversity of opinion.

In *The Commonwealth* vs. *McCall,* (*Virginia Cases* 271,) *cited* 1 *Cowen* 235, *in note*, the prisoner being indicted for grand larceny, it was held that actual tampering, or conversation on the subject of the trial, with a juryman, was not necessary, but that the mere fact of separation from the custody of the officer was sufficient cause to set aside the verdict ; and Mr Justice Nelson, who delivered the opinion of the court, said, " from the mode in which collusion and ' tampering is generally carried on, such circumstance is gen- ' erally known to no person except the one tampering, and ' the person tampered with, or the persons between whom a ' conversation may be held which might influence the ver- ' dict. If you question either of these persons on the sub- ' ject, he must criminate or declare himself innocent ; and you ' lay before him an inducement not to give correct testimo- ' ny."

And in New York, on a trial for murder, the jury having separated after agreeing upon a verdict of guilty, and before they came into court, a new trial was granted for that reason. *Per Spencer, J.,* 18 *Johns.* 218.

We are not prepared to accede to the law as held by the majority of the court in the case in Virginia. Jurors may separate from misapprehension and mistake, and the forms prescribed by the law be thus departed from, and yet the separation be under such circumstances as to show, clearly, that no evil has followed from it ; and in such case neither the public justice, nor the rights of the prisoner, would require that the case, for that reason alone, should be sent to a new trial.

The guards which the law has provided in this respect are not mere matters of form, and the form made essential because it is the prescribed form. They are intended as the means of securing substantial justice ; and if it is made certain that justice has been attained, although there has been a slight departure from the prescribed mode of keeping the jury, we should not be disposed in such case to disturb the verdict.

The later doctrine in New-York is, that the mere separation of a jury, though empannelled to try a capital offence, and although they separate contrary to the directions of the court, will not of itself be a sufficient cause for setting aside the verdict. But if there be the least suspicion of abuse, the verdict should be set aside. 4 *Cowen's Rep.* 26, *The People* vs. *Douglass.*

In that case the prisoner was convicted of murder ; but it appearing that while the jury were out of the court-house, under the charge of two sworn constables, two members of the jury separated from their fellows, went to their lodgings, a distance of thirty rods, ate cakes, and took some with them on their return ; and there being evidence also tending to prove that while they were so absent they drank spirituous liquor, and conversed on the subject of the trial, although this was denied, the court set aside the verdict and granted a new trial.

In *Horton* vs. *Horton,* 2 *Cowen* 589, the jury dispersed after agreeing upon a verdict, which it appears was against the rule there, although it was a civil cause. The court held the separation was not cause for setting aside the verdict, but remarked, that if the slightest suspicion had appeared that the privilege which the jury had taken had been abused to the injury of the party, the verdict should be set aside.

A similar decision was made in *Oliver* vs. *Trustees of Springfield,* 5 *Cowen* 284, and the same principle is recognized 1 *Cowen* 221, *Smith* vs. *Thompson ;* 2 *Barn. & Ald.* 462, *The King* vs. *Kinnear & a.*

In *The People* vs. *Ransom*, 7 *Wendell* 423, which was an indictment for murder, these decisions and others were referred to ; and Mr. Justice Sutherland, who delivered the opinion, said, "the conclusion from these cases appears to me ' to be this, that any mere informality or mistake of an offi- ' cer in drawing a jury, or any irregularity or misconduct in ' the jury themselves, will not be a sufficient ground for set- ' ting aside a verdict, either in a criminal or civil case, where ' the court are satisfied that the party complaining has not, ' and could not have, sustained any injury from it."

We concur with the court in New-York in the positions thus laid down ; but we think there is another principle which should also be applied in a criminal case, which is, that where there has been an improper separation of the jury during the trial, if the verdict is against the prisoner he is entitled to the benefit of a presumption that the irregularity has been prejudicial to him ; and that it is incumbent upon the government to show, and that beyond a reasonable doubt, that the prisoner has suffered no injury by the departure from the forms ordinarily pursued in the administration of justice.

The prisoner is, in such case, entitled, as a matter of right, to require, in the first instance, a compliance with the ordinary forms provided by the law to secure to him a fair and impartial trial ; and if the guards provided for his security are neglected or disregarded, he is at least entitled to require, at the hands of the government, satisfactory evidence that he has not received detriment by reason of such neglect, and is not to be put to show, affirmatively, that such departure from the customary mode of trial has been the probable cause of his conviction.

The shield which the law has provided would fall far short of affording him the protection intended, if it might be thrown aside at pleasure, and he have no right to complain, unless he could prove that the want of it had been actually prejudicial to his case—a matter which it might in

many cases be very difficult to prove, notwithstanding such was the fact.

He has the right, therefore, to call upon the officers of the government, in such case, before they demand judgment, to show that the irregularity in the trial has not been the means of injustice in the verdict.

As the law humanely presumes his innocence, in the first instance, until his guilt has been proved beyond a reasonable doubt, so it will presume that a departure from the mode prescribed by the law for his trial has been to his prejudice, until the contrary is shown by the same degree of evidence.

We proceed to apply these principles to the present case.

It appears, from the affidavits filed in the cause, that after the jury were empannelled, and after they were committed to the charge of officers sworn to keep them, members of the jury were at many different times separated from their fellows,—in some instances one of the officers being in company with them, and in some instances not.

It is proved that in three instances individual members of the jury went to the post-office for the purpose of putting in letters. One of these jurors went also to a store to purchase a handkerchief. A fourth went to a public house to get a package of clothing.

There was an impropriety in this, notwithstanding they were in each case accompanied by one of the officers who had charge of the jury ; because the necessity for so doing is not apparent, and there was danger that in visiting places of public resort, during the pendency of the trial, they would necessarily hear remarks in relation to the case, notwithstanding the efforts of the officer to prevent it.

Still, as they were attended by an officer ; as there is no evidence on the part of the prisoner that any one conversed with them or in their hearing at these times ; as the officers testify, generally, that they did not suffer any person to speak to the jury, or in their hearing, relative to the trial, and as these jurors swear, in substance, that they did not,

during the trial, hear any person speak of or concerning the trial, (although two of them add the qualifying phrase, "according to their recollection") we should not be justified in setting aside the verdict for this reason, if it stood alone.

Another juror, it is admitted, went twice to a friend's house, at one time accompanied by one of the officers who had charge of the jury,—on the other, accompanied by another officer, not sworn to keep the jury, and who did not in fact return with him to the jury room, but left him to proceed alone when within a short distance of the house.

This was a clear case of separation, although it was doubtless the result of mistake and misapprehension. The juror, however, swears that he did not, during his absence, nor at any time during the trial, hear any conversation about, or allusion to, the trial, from any person, except the jury, or in court. The officer who accompanied him the last time, swears that there was none during their absence; and there is no evidence on the part of the prisoner to rebut this testimony. We should not for this cause set aside the verdict.

There is, however, other matter to be considered. The members of the jury, with one exception, are shown to have resorted to a barber's shop, kept in the same building where they boarded, and some of them more than once. The owner of the shop testifies, that two of the jurymen at different times on the morning of the second day of the trial came into his shop, separately, "and unattended by any person, and 'one of them, as he came in, remarked that we must not say 'any thing of it, or words to that effect. There was other 'company in the room at the time when each of them came 'in, and remained while they were there, which was from 'ten to fifteen minutes; but there was no officer who attend-'ed them in my shop during said time, or that went out 'with them."

It is not supposed that the officers were guilty of intentional misconduct; but there is reason from this statement to believe that they were not careful at all times to keep

the jurors in their presence. Where they were at this time does not appear; but we cannot say that here is not sufficient evidence of a separation, and evidence also that one of the jurymen was aware that it was improper.

The owner of the shop farther testifies, that on the following morning, as two of the jurymen were coming through the door of his shop, an individual remarked that the jury would bring in said Prescott guilty;—that the jurymen were not more than ten feet from him when the remark was made, and approaching towards him—and that some reply was made to it.

Two of the jurors state that they were in the shop that morning. One of them states that he had no conversation with any one relative to the prisoner, or his trial, nor did he hear any. The other says, " I heard no conversation *that I recollect* relative to Prescott or his trial in passing to or from said shop, or while in the same." A somewhat similar qualification, as before remarked, is made by two of those who were at the post-office, and who were also at some time in the barber's shop, when they speak generally of not hearing any conversation during the trial. This form of expression is matter for consideration, under circumstances like the present. It may be merely a mode of making what is intended as a general denial, but it may have been used because the individual was unwilling to make a positive denial of the fact.

That the declaration, that the jury would bring the prisoner in guilty, was made in the shop as the two jurors came in, is not denied. The name of the individual who made it is given, and no contradiction of the fact appears from him. It would be very probable that they, or one of them, would hear it.

If in this resort to such a public place, by jurors, during a trial which excited great interest, some of them did not hear remarks relative to the trial, or the probable guilt or innocence of the prisoner, it would be a remarkable evidence

of caution on the part of the spectators generally; much greater caution than is usually exercised in such places upon like occasions.

But suppose we could say, that the jurors might have heard nothing; that they probably did hear nothing—that is not sufficient;—and we cannot say that there is no suspicion of abuse. We cannot say that there is no reasonable doubt that none of them heard remarks which would be very likely to be made, when, under such circumstances three of the jurors give a qualified denial. ·

There is still another circumstance. A Mr. Potter testifies, that on the morning of the day on which the judge charged the jury, he was in the bar-room of the hotel; and while there one of the jurymen came into the bar-room, unattended by any officer, and called for a glass of spirit, and drank it: That the witness stepped towards him, and told him he ought not to be there—upon which the juror requested him to say nothing. And this witness farther testifies, that at another time during the trial, he thinks the day previous, he saw the same juror drink gin at the bar, an officer being then in attendance, and that at both times other individuals were present in the bar-room.

On examination of the affidavit of this juror we find that he says nothing of his ever having been at the bar, although he speaks of having been in the barber's shop. He states nothing of drinking gin at the bar, although he admits he drank some in the jury-room for his health. These are omissions, whether unintentional or otherwise, which must attract attention. He states in his affidavit, that he never left the jury room on any occasion without being attended by an officer. If he means merely that an officer attended him when he left the jury room—not intending to say that the officer continued with him—it is not sufficient. If he means that an officer attended him at all times, he is at issue with Mr. Potter. If he might be out of the keeping of the

officer without recollecting it, he may have heard conversation respecting the case without recollecting that fact.

Certainly, under all these circumstances, we cannot say, affirmatively, that we are assured, beyond reasonable doubt, that the prisoner has had such a trial as the law secures to him, before we can rightfully pass upon him a sentence of death.

These irregularities may not have affected the prisoner, but that is not enough. Even if it was probable they had not, mere probability would not suffice.

We do not intend to impute intentional misconduct to any of the jury during any part of the trial. We doubt not they meant to try the case faithfully and impartially. There is some evidence tending to show, that in one or two instances individual members of the jury were aware that it was incorrect for them to resort to public places, in the manner they did; but they probably may not have considered the duty of keeping aloof from any possibility of influence from without, so essential as the law deems it.

If, from the infrequency of trials of this nature, the people generally are not fully aware of the strictness with which the law guards the rights of the accused, such infrequency, so creditable to the community, may well furnish matter of extenuation for the departure from the ordinary rules during this trial; but it can furnish no reason why the prisoner should not have extended to him that measure of mercy and justice which the law has wisely provided in cases where the consequences may be so awful, and where the sentence once executed there can be no opportunity for revision, or the correction of error.

From the view we have taken of the case thus far, it becomes unnecessary to examine the other points raised by the counsel for the prisoner. That there have been other irregularities does not admit of a doubt. Among them is the introduction of ardent spirit into the jury room during the progress of the trial. It is suggested in some of the affida-

vits that it was used by some of the jury on account of illness. But nothing is disclosed, even in that point of view, which tends to a supposition that the urgency of the case required its immediate introduction, without an application to the court.

In *Brant* vs. *Fowler, 7 Cowen* 562, which was a civil case, a juror having drank brandy, though in trifling quantity, and as he stated on account of disease, the court set aside the verdict. And in the 4 *Cowen* 36, Mr. Justice Woodworth says, it will not do to weigh and examine the quantity which may have been taken by the jury, nor the effect produced.

But the question, whether the consumption of spirituous liquors by jurymen during the progress of a trial, will, in our opinion, furnish ground for granting a new trial, may well be left until another case of that character is brought under our consideration.

It being fully proved that there has been an irregularity in the trial of this case, by the unauthorized separation of the jury—and the government having failed to show, beyond a reasonable doubt, that this could not have been prejudicial to the prisoner, the verdict must be set aside, and the case transferred to the common pleas for a

*New trial.*