## John Boynton v. David Trumbull.

Where the jury agreed, that, to fix the amount of the plaintiff's damages, each juror should mark a sum, and that half of the aggregate of the highest and the lowest sums, which should be marked, should be taken for such damages, and made up and returned their verdict according to this agreement and without any further deliberation,—*held* that the verdict should be set aside.

The first count was in trespass quare clausum, and charging that on the 29th day of April, 1860, defendant broke and entered plaintiff's close, in Hill, in said county, and set his dog upon the plaintiff's cattle, to wit: One yoke of four-years old steers, and one red cow, and one black cow, then and there being in said plaintiff's close, and that said dog frightened, drove and worried said cattle, trod down and destroyed plaintiff's grass, &c., and trod up and damaged the plaintiff's soil, and greatly damaged his said cattle, and caused the death of said black cow.

Two other counts were added, charging the defendant, on, &c., set his dog upon plaintiff's cattle described as aforesaid, then and there being in said plaintiff's close, and that said dog worried, drove and frightened said cattle, and bit and lacerated them, and caused said black cow to be thrown down and injured, which caused her death.

At the first term the defendant confessed the plaintiff's said action, as in his declaration alleged, excepting what is therein alleged in relation to said black cow, and that the plaintiff is entitled to recover damages in said action to the amount of five dollars, and no more. And as to the residue of plaintiff's claim and to all injuries alleged to have been done to said black cow, he pleaded not guilty.

On trial the evidence tended to show, that, on said 29th April, the plaintiff's cattle being in his own close and near the division fence between the plaintiff's and defendant's land, the defendant set his dog upon them and drove them some ten or fifteen rods into the bushes, when the dog returned. There was evidence also tending to show that the cattle continued running some distance further, treading up the soil in the bushes and leaving tracks all the way, and the black cow was soon after found dead with the other cattle near her. The evidence was conflicting as to whether the black cow was with the others when the dog was set upon them or not. No damage was done to the other cattle. It appeared that the dog was 13 years old, rather fat and quiet, and weighed 21 pounds.

The jury returned a verdict of not guilty as to the injuries alleged to have been done to the black cow, but they assessed plaintiff's damages to which he was entitled upon other grounds, at $5.21, at date of the defendant's confession. This verdict the defendant moves the court to set aside, because the verdict was determined by balloting; because that part of the verdict which related to the breaking and entering the plaintiff's close, and starting off the steers and red cow from the division fence was determined by marking—the jury agreeing to take the lowest and highest sums "marked" and add them together, divide by two and call the quotient the amount of damages, thus rejecting the opinion of

ten of the jurors; and because the verdict of $5.21 is against the evidence.

The evidence in relation to the conduct of the jury was the following affidavit:

"I, Joseph L. Spaulding, of Rumney, in the county of Grafton, depose and say that I am a Deputy Sheriff in and for said county, and attended the Trial Term of the Supreme Judicial Court, holden at Plymouth, on the third Tuesday of May, 1863, and had charge at said term of the jury that tried the case of John Boynton against David Trumbull; that after conducting the jury to their room I went in and sat down with them; some one of the jury proposed to "mark," or "chalk," and called on me for some paper. I took and cut some paper into small pieces and laid it upon the table. The jury took these pieces of paper, in my presence, and marked something upon them and put them into the foreman's hat; he turned them out on the table, looked them over, and said the highest is ten dollars and the lowest is forty-two cents, and said the damage then is five dollars and twenty-one cents, and set that amount down on the paper furnished them to make up their verdict on; and then they proceeded to talk about the death of the black cow—or the cause of her death. I soon noticed that there was a difference of opinion among them, and I went out and locked them in, and after that was in and out occasionally.

Once when I was in their room they balloted, and stood six and six. After that I was in again and they balloted and stood five for the plaintiff and seven for the defendant. I then remained in their room until they were agreed. After the last balloting as above stated, when they stood five and seven, some one of the jury proposed that they then take twenty-four pieces of paper and on fourteen of them write defendant, and on ten the word plaintiff—and that I should do it, and put them into my hat and shake them up, and the foreman should draw out twelve of them, and if a majority of the twelve so drawn should have the word plaintiff on them, then their verdict should be for the plaintiff—if a majority had defendant on them, then their verdict should be for the defendant.

This arrangement they all agreed to, and I prepared the ballots accordingly, and laid them on the table. Fourteen had the word defendant written on them and ten the word plaintiff. The jury looked at them, when I put them into my hat, shook them up, and the foreman drew out and put them into two piles, and before he had drawn out twelve he had drawn out seven for defendant, or with the word defendant on them, when they, according to the said previous agreement, said the defendant was not guilty of the death of the black cow; and on said paper so furnished them, before referred to, they made up their verdict accordingly, and I immediately conducted them into the court room when their verdict was announced or read by the Clerk."

The questions of law arising upon this case were reserved.

*Fling*, for defendant.

*Pike & Barnard*, for plaintiff.

BARTLETT, J. The affidavit of Spaulding tends to show conduct of the jury that was in most gross violation of their duty; and, although the testimony of the jurors in exculpation of themselves would have been competent, *Tenney* v. *Evans*, 13 N. H. 464, yet no attempt has been made to deny or explain the statements in the affidavit. The facts stated by Spaulding, unexplained as they are, warrant us in concluding that the jury agreed to fix the damages by each marking a sum and then dividing the aggregate of the highest and the lowest sums marked by two for their verdict; that this was done and the sum of $5.21 thus obtained was, according to the arrangement and without any further deliberation, set down and returned as the damages. However much we may be surprised at the circumstances under which these facts come before us, and however manifest may be the impropriety of the officer's presence in the jury-room during the deliberations of the jury, yet, as the facts are in evidence, we cannot disregard them because of the circumstances under which they have been shown in this case, *State* v. *Flynn*, 36 N. H. 70, and a verdict thus made up cannot be sustained. *Dorr* v. *Fenno*, 12 Pick. 527; *Harvey* v. *Rickett*, 15 Johns. 87; *Smith* v. *Cheetham*, 3 Caines, 57; *Tyler* v. *Stevens*, 4 N. H. 116. As the verdict must be set aside, it is unnecessary to inquire whether the defendant's objection on account of the mode in which the jury arrived at their verdict in his favor on another part of the case, is open to him. It, however, seems to us proper to remark, that, in finally determining the question upon that branch of the case, the jury seem to have acted in utter disregard of the obligations of their oaths. The verdict must be set aside and a new trial granted.