Grafton,
Nov. 7, 1906.

## WINSLOW, *Ap't*, *v.* SMITH, *Adm'r*.

A statement by counsel in argument to the effect that expert witnesses are
employed in the interest of their clients and are well paid for the service,
made for the purpose of discrediting testimony presented by the adverse
party, unsupported by any evidence as to the compensation paid to such
witnesses generally or in the particular case, and not neutralized by sub-
sequent action of counsel or instruction from the court, furnishes sufficient
cause for setting aside a verdict.

Where it is claimed that misconception of an issue has resulted in an erro-
neous verdict, it is within the power of the trial court to recall the jury
after a separation and inquire of them as to the grounds on which they
proceeded; and if it appears that there has been a misconstruction, the
verdict should be set aside, and the question should be recommitted under
proper instructions or submitted to another jury upon a new trial.

The affidavits of jurors are not admissible in evidence to prove their miscon-
struction of an issue submitted to them.

APPEAL, from the probate of a will. The issues were: (1)
Was the testatrix, Lora T. Bosworth, of sound mind when she
executed the will? (2) "Was Lora T. Bosworth, on December
13th, A. D., 1904, [the date of the execution of the will] induced
to execute this instrument as her last will, by undue influence
. . . on the part of Ellen F. Smith and others interested in
the making of said will?" The questions were drawn by the
defendant's counsel and agreed to by the plaintiff's counsel.
Transferred from the November term, 1905, of the superior court
by *Stone*, J.

Two of the plaintiff's witnesses were physicians, who, having
shown that they were qualified, testified as experts. The defend-
ant's counsel in his closing argument said: "Well now, Mr. Fore-
man and gentlemen of the jury, they produce two experts to say
she [the testatrix] was not fit at that time to make a will,—very
good men, men for whom I have great respect, as much respect as
I can have for any expert, which I confess is mighty little, because
they are employed to serve their clients and paid mighty well for
it." The plaintiff excepted. The court said the plaintiff could
have the exception, and the defendant's counsel said "Undoubt-
edly," and continued his argument. There was no evidence relat-
ing to the pay the experts received or were to receive for testify-
ing, or to the fees usually paid experts. The counsel did not
withdraw his remarks, nor offer an apology for making them. The
plaintiff's motion to set aside the verdict because of the prejudicial

effect of the remarks was denied, subject to exception. The court did not find whether the remarks had any effect one way or the other upon the jury, nor whether they were prejudicial or misleading.

The court instructed the jury as to what constituted undue influence, and, in substance, that in deciding the question they should take into consideration all the evidence before them bearing thereon.

The case was submitted to the jury about three o'clock in the afternoon of Wednesday, the day before the annual Thanksgiving, and the jury were instructed, in the presence of both parties and without objection by either, that if they agreed upon a verdict when the court was not in session they could seal it up and hand it to the sheriff. The presiding justice and counsel left the town that afternoon. It was understood by the jury and the counsel for both parties that there would be no further session of the court until the following Monday, and there was none. The verdict was handed to the sheriff about eleven o'clock in the evening of the same day. The answer to the first question was "Yes," and to the second "No."

After the opening of the court's session Monday morning and before the verdict was opened, the plaintiff's counsel stated to the court that he had learned that the jury had construed the second question as limiting them to the consideration of testimony showing that the undue influence was exerted December 13, 1904; that they had answered the question upon that construction, although many, if not all, of them were of the opinion that the will was the result of undue influence previously exerted; that they would have decided the question in the affirmative had they understood they were at liberty to consider the evidence of such influence; and that before deciding the question they desired further instructions, but were unable to obtain them because of the absence of the court. The counsel moved that the jury be sent back to their room with instructions as to the meaning of the second question. The court ruled that, inasmuch as the verdict had been delivered to the sheriff and the jury had separated, it was beyond his power to recall the verdict and grant the motion. The motion was accordingly denied, subject to the plaintiff's exception.

The plaintiff subsequently filed a motion to set aside the verdict because, among other things, (1) the jury desired further instructions and were unable to obtain them, and (2) the language of the question was erroneous and likely to mislead the jury, and did in fact mislead them. He offered the affidavit of the foreman that further instructions were desired by the jury, and that they construed the second question as alleged and probably would have

come to the opposite conclusion if they had understood that they were to consider the testimony relating to undue influence exerted prior to the day stated in the question; also the affidavit of another person that the foreman made to him immediately after the trial substantially the same statement as that contained in his affidavit. The court declined to receive or consider the affidavits and denied the motion, both subject to the plaintiff's exception.

*Branch & Branch* and *Alonzo L. Chamberlin*, for the plaintiff.

*Mitchell & Foster* and *Marshall D. Cobleigh*, for the defendant.

CHASE, J. 1. The defendant cites *Lee* v. *Dow*, 73 N. H. 101, in support of his position that the verdicts should not be set aside because of the statement of his counsel to the jury in the closing argument to which the plaintiff excepted. In that case the question of fact, whether the jury were misled and prejudiced by the misconduct alleged, was distinctly presented to the presiding justice by the motion of the excepting party and was decided in the negative. Moreover, the statement objected to was withdrawn by the counsel making it, the jury were instructed by the court to disregard it, and the conduct of the opposing counsel had a tendency to show that he waived the making of further efforts to remove from the minds of the jury the impressions made by the statement. In this case it appears that the court did not pass upon the question of the effect of the counsel's statement upon the minds of the jury, nor upon the character of the question; and there was no withdrawal of the statement, or instruction to the jury to disregard it, or any conduct of the opposing counsel tending to show a waiver of further efforts to neutralize its effect. *Lee* v. *Dow* certainly does not support the defendant's position.

The objectionable statement of counsel was, in substance, that he had " mighty little " respect for experts " because they are employed to serve their clients and paid mighty well for it." The object of the statement obviously was to discredit the testimony of the experts produced as witnesses by the plaintiff. In effect, it was asserted that experts generally are liberally paid hirelings, or persons actuated by mercenary motives, and for this reason the counsel had very little respect for them. If the jury were not asked to consider the fact of the counsel's want of respect for such witnesses, they were asked to entertain a like want of respect because of their venal character. In other words, they were asked to regard the testimony of the physicians referred to, as likely to be colored and made untrustworthy by the partisanship arising from such employment. It appears that there was no evidence

before the jury in relation to the compensation these physicians were paid or promised, or the compensation experts usually receive. It does not appear that there was any evidence tending to prove that the physicians were specially employed by the plaintiff, or rendered him any service in the case other than giving their testimony under oath upon the witness stand, or that experts generally are employed by the party in whose behalf they testify, to specially serve his cause. So far as the record discloses, there was no difference between these witnesses and the plaintiff's other witnesses, in the manner of procuring their testimony and paying therefor. While it may be that lawyers know that experts are sometimes employed by parties to aid in the preparation of their cases and to render special and perhaps valuable services before and at the trial, and are paid much larger sums for such services than the statutory fees of witnesses or the sums received by unskilled laborers for services, it cannot be said that these are matters of common knowledge, which need not be proved to entitle a party to found an argument upon them before the jury. To entitle the defendant to attempt to impeach the testimony of these witnesses as he did, he should have laid before the jury testimony tending to prove that the witnesses were employed to serve the plaintiff in a different way from that in which witnesses are ordinarily produced upon the witness stand, and that the witnesses were paid or promised sums for their services which would justify the characterization "mighty well paid." The counsel was not at liberty to supply this testimony by his unsworn statement. The statement had a tendency to prejudice the jury against the physicians' testimony and so was prejudicial to the plaintiff. As it was not withdrawn and no steps whatever were taken to remove its prejudicial effect from the minds of the jury, it must be presumed in this court that it influenced the jury in forming their verdict, to the prejudice and injury of the plaintiff. *Story* v. *Railroad*, 70 N. H. 364, and authorities cited. The plaintiff's exception thereto is sustained.

2. The second question submitted to the jury is capable of two constructions: one, whether undue influence exerted on December 13, 1904, the day of the execution of the will, induced its execution; and the other, whether such influence, whenever exerted, operated on that day to induce the execution. It is not strange that the court and counsel, with their knowledge of the law, should have understood that the limitation introduced into the question by the date applied, as it did in the first question, to the execution of the will, rather than to the acts relied upon as constituting undue influence. If attention had been called to the ambiguity before the jury retired, it probably would have been

removed by changing the form of the question, or by more specific instructions to the jury. If not so removed upon the plaintiff's request, he could have fully protected his rights by an exception and transfer of the case. But not noticing the ambiguity, he did not take either of these precautions. His failure cannot fairly be attributed to want of care, in view of the fact that the ambiguity is not very pronounced and was not noticed by the opposing party or the court. But he did notice it before the verdict was accepted and recorded, and immediately called the court's attention to it and moved that the case be recommitted to the jury, with instructions concerning the true meaning of the question. The motion was denied, not because the question was regarded as unambiguous, nor in the exercise of discretion, but for want of power. The plaintiff's exception raises the question whether, under the law, the court was as powerless as he believed himself to be.

In *Dearborn* v. *Newhall*, 63 N. H. 301, *Doe*, C. J., in stating the law of the state on the subject used the following concise and plain language, which, because it so unmistakably shows that the court in the present case possessed the power invoked by the plaintiff's motion and because it so definitely points out the way for ascertaining the facts required for an intelligent exercise of the power, is quoted at length: " In some jurisdictions a recorded verdict cannot be amended by the jury after their separation; but in this state a different practice prevails. The error in this case [the application by the jury of the sum for which the property attached in the action was sold at the sheriff's sale, in part payment of the amount they found to be due the plaintiff] could be corrected, whether the verdict had or had not been recorded, and whether the jury had or had not separated. Their separation increased the danger of wrong being done by their amendment of the verdict. The increased danger raised the question whether justice required a recommittal of the case for reconsideration, and when, on reconsideration, the verdict was amended, there was a question whether justice required a judgment on the amended verdict. Both questions were matters of fact to be determined at the trial term. . . . The court could inquire of the jury touching their verdict and the grounds upon which they proceeded, for the purpose of ascertaining whether the case had been properly tried. . . . The inquiry could be made after the jury, being discharged from the case, had separated. . . . The reason for making the inquiry [information communicated to the court by one of the jurors] did not suspend either the power of inquiry or the power of recommitment. . . . The recording of an erroneous verdict, award, or judgment does not necessarily render all its errors incurable; and the separation of jurors, ref-

erees, or other judges does not necessarily disable them to undo the injustice of such a mistake as the jury fell into in this case." The jurors were called together by the court two days after they had rendered their verdict and separated; and it appearing, upon inquiry of them, that a mistake was made, the case was recommitted to them with further instructions, and a new verdict was rendered.

If the affidavits offered by the plaintiff in the present case to sustain his motion were not competent testimony, as it seems they were not (*Tyler* v. *Stevens*, 4 N. H. 116; *State* v. *Ayer*, 23 N. H. 301; *Folsom* v. *Brawn*, 25 N. H. 114; *Leighton* v. *Sargent*, 31 N. H. 119; *Knight* v. *Epsom*, 62 N. H. 356; *Hearn* v. *Railroad*, 67 N. H. 320), it appears from *Dearborn* v. *Newhall* that the law furnished other adequate means for ascertaining whether the question submitted to the jury was misconstrued by them and whether their verdict was rendered erroneous thereby. The court could have called the jury together and inquired of them how they construed the question. Besides *Dearborn* v. *Newhall* and the cases cited in it, the following authorities are to the same effect: *Norris* v. *Haverhill*, 65 N. H. 89; *Hearn* v. *Railroad, supra; Jenness* v. *Jones*, 68 N. H. 475. The ambiguity in the question and the consequent danger of there being error in the verdict would have induced the court, without doubt, to take this course, had he believed that the error, if one was discovered, could be corrected. The court's ruling that it was beyond his power to recall the verdict and grant the plaintiff's motion rendered it useless to make any inquiry concerning the jury's action. The ruling was highly prejudicial to the plaintiff. It deprived him of the last opportunity for having the possible error discovered and corrected. It deprived him of the right to have the court exercise his discretion upon the questions whether inquiry should be made of the jury and whether the matter should be submitted to them for further consideration. If an inquiry of the jury had been made and it brought out the fact that the question was properly construed, there would be no occasion for further action; but if it showed that they had misconstrued the question, justice would require that their verdict should be set aside and the question in its true sense should be submitted to them or to another jury. Whether their separation and the subsequent lapse of time rendered it improper to submit the question to them depended upon the circumstances. If nothing occurred between their separation and reassembling to disturb their impartiality and fair-mindedness, there could be no objection to submitting it to them with proper instructions; but if the circumstances showed that during this interval the jurors had become disqualified to properly discharge

their duties, the question would have to be submitted to another jury upon a new trial.

As the ground upon which the plaintiff's motion was denied was erroneous, his exception to the denial must be sustained. Ordinarily such error would be cured by resubmitting the motion to the trial court, to be considered and determined in the light of the law as finally decided. But it is probable that the discharge of the jury, the adjournment of the court, and the lapse of time render this course impracticable in this case. Whether, under these circumstances, the error can be cured in any way except by a new trial need not now be determined, since both verdicts must be set aside in consequence of the error first considered—a result that must necessarily avoid the prejudicial effect of the last error, as well as the first.

*Exceptions sustained : verdicts set aside.*

All concurred.