Hillsborough
No. 84-134

STEVEN F. BUNNELL

v.

STEPHEN LUCAS

June 19, 1985

*Moquin & Daley,* of Manchester (*Richard C. Moquin* on the brief, and *Elizabeth R. Jones* orally), for the plaintiff.

*Wiggin & Nourie,* of Manchester (*Benjamin Yardley* on the brief and orally), for the defendant.

BATCHELDER, J.   In this appeal, the plaintiff claims that the Superior Court (*Wyman,* J.) erred in denying the plaintiff's motion for a new trial after evidence was presented that the jurors had improperly averaged their individual assessments of liability in reaching their verdict. We affirm.

This suit arose from a motorcycle accident involving the parties. Among the issues submitted to the jury was the proper allocation of fault pursuant to RSA 507:7-a. The jury found, by special verdict, that the plaintiff's share of the fault was 56% and the defendant's 44%, resulting in a verdict for the defendant.

The day after trial, one of the jurors contacted the plaintiff's trial counsel. The juror informed him that the jury had reached its decision on the allocation of fault by averaging the jurors' respective determinations on this issue, that the jurors had not been asked by the foreman whether they each agreed with the result of the averaging, and that the juror had in fact disagreed with the result. The attorney advised the juror to inform the court about the alleged defects in the jury deliberations.

Upon hearing the juror's allegations, *Wyman,* J., questioned the jury foreman in chambers. The foreman stated that the jurors had indeed averaged their respective positions on the issue of fault, but that every juror had assented to the result.

After meeting with counsel for both parties, the court recalled the entire jury for questioning. Ten of the twelve jurors stated that they had been asked by the foreman whether they agreed with the result and had in fact agreed. One juror stated that, although he did not remember being asked, he thought that the jury had been "in agreement" on the result. Only the juror who had raised this issue indicated that the foreman had not polled the jurors to determine whether they were in agreement with the result of the averaging.

It is, of course, improper for jurors to agree in advance to be bound by an average of their respective positions on an issue. *Boynton v. Trumbull,* 45 N.H. 408, 410 (1864). To so decide an issue may

result in a less than unanimous verdict and permits a single juror to leverage the weight of his vote by giving an unduly high or low figure as his estimate.

The court found that the deliberations had been conducted properly and that a new trial was therefore not necessary. The court stated:

> "On the basis of the response by the jurors and the foreman to the questions that were asked, the Court affirms the verdict as given. The Court finds as a fact that the jury was polled after the process of [averaging] 12 separate jurors' answers . . . as to whether or not they agreed with the percentage which was announced. The Court further finds that there was no agreement in advance to be bound by the percentages announced. The Court further finds that the jury at the time in the jury room responded affirmatively to the fact that the percentages as announced were the verdict of the jury, . . . and a motion for a new trial is denied . . . ."

On appeal, the plaintiff argues that the evidence does not support the findings by the trial court and, therefore, that its denial of the motion for a new trial constituted error. We disagree.

■ "It is a feature of a jury trial for the trial judge not only to see that the trial is fairly conducted but also to correct or vacate what turns out to be an unfair result . . . . If the trial court's duty in this respect is to be meaningful his discretion must be broad." *LeClerc v. Gray*, 112 N.H. 430, 432, 298 A.2d 116, 117 (1972) (citations omitted).

■ The trial court's decision not to order a new trial in the instant case necessarily depended on a finding that the allegations of the juror were not credible. In light of the fact that the testimony of this juror was contradicted by the testimony of ten other jurors and was not corroborated by any other evidence, we find that the court's failure to regard the juror's testimony as credible was reasonable. We therefore affirm the denial of the plaintiff's motion for a new trial.

In presenting his case, the defendant argued that the trial court properly denied the plaintiff's motion for a new trial because the juror's testimony was inadmissible to impeach the verdict. Although this argument correctly characterizes the law of evidence, the authority of the trial court to consider such testimony in the exercise of its supervisory role over the jury was not an evidentiary issue.

■  The resolution of disputes by jury verdict is part of the bedrock on which our legal system rests. The right to trial by jury derives from the Magna Carta and is guaranteed by the State and National Constitutions. N.H. CONST. pt. I, arts. 16 and 20; U.S. CONST. amend. VII.

Despite the significance of the role of the jury in our jurisprudence, the jury deliberative process is occasionally corrupted by the weaknesses of its participants. An early Pennsylvania case, *Cluggage v. Swan*, 4 Binn. 150, 155 (Pa. 1811), speaks of verdicts being obtained in the quaint, but nonetheless offensive, manners of "throwing up cross and pile [tossing of a coin], hustling a halfpence in a hat, [and] casting of lots." In this jurisdiction also, human frailty has had its impact. In *State v. Prescott*, 7 N.H. 287, 297–98 (1834), the propriety of a juror's ingestion of gin allegedly for his health during deliberations in a capital case was raised. And in *Boynton v. Trumbull*, 45 N.H. 408 (1864), a verdict was set aside on the ground that the jurors, with the help of the deputy sheriff, had arrived at a verdict of $5.21 in damages after averaging the highest and lowest juror estimates on the issue.

Because the deliberative process is sometimes flawed, we consider the proper treatment to be given a juror's testimony indicating a defect in the deliberations.

■  The law does not look with favor on the testimonial disclosure by jurors of the conduct of their deliberations. Dean Wigmore traces this policy to the privileged communications rule and the parol evidence rule. The privileged communications rule operates to discourage disclosure and thus to allow juror communications to "originate in a confidence of secrecy." 8 WIGMORE, EVIDENCE § 2346, at 678 (McNaughton rev. 1961). As a result, the rule engenders an atmosphere conducive to carefully considered verdicts. Justice Cardozo writes: "Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world." *Clark v. United States*, 289 U.S. 1, 13 (1932). Regarding the verdict as a compact among the jurors, the parol evidence rule likewise operates to discourage disclosure, on the ground that the verdict, as the legally significant act of the jury, should not be alterable by subsequent juror testimony. 8 WIGMORE, EVIDENCE § 2348, at 679 (McNaughton rev. 1961).

■■  The law of this jurisdiction recognizes the soundness of the policy against testimonial disclosure of the conduct of jury deliberations. The most notable expression of this policy is the rule governing the treatment of juror testimony offered to support or to

impeach a verdict. Under this rule, the affidavit or testimony of a single juror "is admissible in exculpation of himself, [or] to sustain a verdict," but is inadmissible where it is offered as a basis for setting the verdict aside. *Leighton v. Sargent*, 31 N.H. 119, 137 (1855). Evidence offered to impeach a verdict is legally incompetent because its admission would create the danger of allowing "verdicts to be set aside upon a change of opinion by any juror after he had been exposed to improper influences." *Breck v. Blanchard*, 27 N.H. 100, 103 (1853). This rule dates back to *Tyler v. Stevens*, 4 N.H. 116 (1827), in which the defendant offered in support of his motion for a new trial the affidavits of five jurors indicating their misunderstanding of the trial court's instructions. This court held the affidavits inadmissible:

> "If it were once settled that the affidavits of jurors could be received to prove that they had misunderstood the instruction given them by the court, and that such misunderstanding was a legal ground for granting a new trial, the consequences would be most mischievous. For a very little tampering with individual jurors after the trial would enable any party to procure such affidavits and no verdict could be permitted to stand."

*Id.* at 118.

Although this policy against admission of juror testimony is well established in New Hampshire law, it, like other policies, admits of exceptions when in conflict with other compelling considerations.

> "The recognition of a privilege does not mean that it is without conditions or exceptions. The social policy that will prevail in many situations may run foul in others of a different social policy, competing for supremacy. It is then the function of a court to mediate between them, assigning, so far as possible, a proper value to each, and summoning to its aid all the distinctions and analogies that are the tools of the judicial process."

*Clark v. United States*, 289 U.S. 1, 13 (1932).

■ A consideration competing with the policy against the admission of juror testimony is the need to facilitate the effective exercise of "the general supervisory powers of the court over the product of the jury which may be exercised by the court, if justice requires." *Caldwell v. Yeatman*, 91 N.H. 150, 155, 15 A.2d 252, 255 (1940). The tension between these two policies has produced the rule that, although juror testimony is inadmissible in evidence to impeach the verdict, it may properly be considered by the court to

determine whether the jurors should be recalled for questioning. *See Winslow v. Smith*, 74 N.H. 65, 70, 65 A. 108, 110–11 (1906).

> "This rule appears to have been first announced in this state in 1842 in the following language: 'We are not disposed to doubt that the court may inquire of the jury touching their verdict and the grounds upon which they proceeded, for the purpose of ascertaining whether the case has been properly tried.' It has since been frequently reaffirmed."

*Caldwell, supra* at 154, 15 A.2d at 255 (1940) (quoting *Walker v. Sawyer*, 13 N.H. 191, 196 (1842)) (citations omitted).

■ Thus, while "[i]t is 'firmly settled law' that the testimony of jurors is incompetent to impeach their verdict . . . ,

> [i]t is likewise settled . . . that the Trial Court may in its discretion recall and interrogate the jurors concerning the ground upon which they proceeded in reaching their verdict, in order to ascertain whether the case has been properly tried; and that this may be done even though the jurors have separated."

*Eichel v. Payeur*, 106 N.H. 484, 486, 214 A.2d 116, 118 (1965) (quoting 8 WIGMORE, EVIDENCE § 2354, at 702 (3d ed. 1940)).

■ "[N]either party has 'the legal right to bring the jurors . . . before the trial judge and have them orally examined.'" *Caldwell v. Yeatman, supra* at 154, 15 A.2d 255 (quoting *Goodwin v. Blanchard*, 73 N.H. 550, 550, 64 A. 22, 22 (1906)). This is a matter within the sound discretion of the trial court. *Id.* at 155, 15 A.2d at 255.

■ ■ This power to recall and interrogate the jury may be exercised "whenever [the court] is of the opinion that the jury may have made some mistake or been guilty of some improper conduct which produced their verdict." *Id.* "[T]he exercise of this power . . . *does not depend upon the introduction before the court of legally competent evidence* of their misconduct." *Id.* (emphasis added). In the instant case, the juror's testimony was therefore a proper basis upon which to recall the jury, even though this testimony was otherwise inadmissible to impeach the verdict.

■ ■ It is improper for jurors to agree to be bound by an average of their respective quantitative positions with respect to damages or percentages of fault. *Boynton v. Trumbull*, 45 N.H. 408, 410 (1864). Our trial court should instruct the jury at some point prior to their deliberations that "chalking" is not permitted, and it is

unlikely that cases such as this will arise with any degree of frequency.

*Affirmed.*

BROCK, J., dissented; DOUGLAS, J., *dubitavit*; the others concurred.

BROCK, J., dissenting: I would reverse and remand for a new trial. The propriety of a jury's employment of the "chalking" technique in determining a party's percentage of fault or damages should not depend upon whether the agreement to be bound by the result achieved is made before or after the chalking has occurred.

DOUGLAS, J., *dubitante*: I remain in doubt as to the views expressed by my brothers Brock and Batchelder insofar as averaging in the absence of a prior agreement to do so.