Hillsborough
No. 85-097

### THE STATE OF NEW HAMPSHIRE

v.

### WAYNE CROSS

December 5, 1986

*Stephen E. Merrill*, attorney general (*Steven L. Winer*, assistant attorney general, on the brief and orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J.   Following a jury trial in the Superior Court (*Bean, J.*) the defendant was convicted on two counts of bank robbery, RSA 636:1. On appeal, he claims that the trial judge erred in allowing

eyewitnesses to identify him in court as the robber, and in denying a motion to set aside the verdict. We affirm.

On November 24, 1982, a lone man robbed the Village Savings Bank in New Ipswich, where he was observed by four employees and one customer throughout the robbery. The police later showed the witnesses an array of photographs that did not include one of the defendant, and although no employee purported to identify the robber from the photographs, some of them noted similarities to the robber's features. The employees recalled that the robber was between five feet six inches and six feet tall, and had a medium build, a reddish or pocked face, and red-blonde hair; three employees observed that the hair was a wig, and one noted that brown hair had protruded from beneath it.

A week after the robbery, one Richard Chisholm appeared at the drive-in service stand located farthest away from the bank's nearest window. Two employees observed him from within the building and identified him as the robber. Although he was arrested and charged with the robbery, a month later the employees realized that they had accused the wrong person, when the bank was again robbed by a man whom some of them recognized as the same one who had committed the earlier crime. Two of the four employees present at the second robbery had witnessed the first, and descriptions of the perpetrator given by all four were consistent with those given before, except that a hat was described in place of the wig.

Some eighteen months after this second incident, the police showed five of the employees a new array of photographs, including one of the defendant. Two of the five selected the defendant's photograph as that of the robber, though not with complete certainty; the other three did not select the defendant's photograph but thought other photographs showed some features similar to the robber's. At trial, over the defendant's objection, each of the six employees who had observed one or both robberies identified the defendant as the robber, four of them with a high degree of certainty.

A week after the trial ended with the defendant's conviction, the foreman on the defendant's jury was in the venire panel from which a jury was to be chosen for another criminal case. In the course of *voir dire* he answered questions from the trial judge about the significance of an indictment and of a defendant's failure to testify. After the colloquy, the judge excused him for cause.

Upon learning of this, counsel for the defendant in this case moved to set the verdict aside and requested a new trial. The defendant's motion did not quote the juror's testimony, since no transcript of the later *voir dire* had been prepared at that point; nor did the defendant attempt to call the juror to the stand in support of

the motion, or to offer any other evidence. Defense counsel simply claimed that the juror had been excused for cause after stating that he "believed an indictment was evidence of a crime and that a defendant is showing his guilt if he did not testify at trial." The court denied the motion and at the same time ordered the preparation of the transcript of the juror's later *voir dire*, on the understanding that it would be included in the record in this appeal. (That is, the court ruled on the motion without benefit of evidence that was nonetheless to be considered on appeal, a practice that we disapprove.)

We deal first with the defendant's objection to his in-court identification, which he claims should have been suppressed on the ground that the risk of prejudice resulting from error outweighed the probative value of the eyewitness testimony. *See* N.H. R. Ev. 403. It is important to recognize that the defendant does not argue that the in-court identifications were tainted by any improper pretrial identification procedure. There was no corporeal line-up or show-up, and there is no claim that the second photographic array, containing the defendant's picture, was suggestive in any way that may have tainted the later in-court identification. *See Simmons v. United States*, 390 U.S. 377 (1968); *State v. Allard*, 123 N.H. 209, 213, 459 A.2d 259, 262, *cert. denied*, 464 U.S. 933 (1983).

The defendant argues, rather, that the identifications should have been excluded because of a variety of factual circumstances that rendered their probative force too insignificant to outweigh their potential for error: the lapse of two years since the robberies; the failure of the witnesses to see the defendant during this period; the mistaken identification of Chisholm by two witnesses; the inability of three witnesses to identify the defendant's photograph in the second array; the exhibition to the witnesses during trial of the prior photographic array containing the defendant's picture; and the position of the defendant at the defense table in the company of defense counsel, whom the witnesses had come to know during pretrial discovery proceedings.

Obviously, these circumstances weakened the value of the identifications, and steps could have been taken to minimize the risks they presented. The police, for example, could have conducted a pretrial line-up; or the court, in the exercise of its discretion in such a close case, could have ordered that one be held, in order to test the witnesses' recollections. At a hearing outside the presence of the jury the defendant could have been seated in the spectator section of the courtroom, among people of not dissimilar appearance, when each witness was asked if he or she recognized the robber. And the photographic array need not have been shown to the witnesses in court before eliciting the in-court identifications.

But it does not follow from these possibilities for better procedures that the actual identifications were unreliable to the point of inadmissibility. *See State v. Ober,* 116 N.H. 381, 359 A.2d 624 (1976). As against the weakening factors that the defendant raises, there were countervailing indicia of reliability. Each witness had at least one extended opportunity to observe the robber in good lighting without distraction, and two witnesses observed the robber twice. Each witness described the robber immediately after the incidents, and all substantially agreed in describing his face and physical build. Although two witnesses did misidentify Chisholm, they realized their own errors immediately on seeing the robber a second time. *See Neil v. Biggers,* 409 U.S. 188, 199–200 (1972) (listing factors bearing on reliability of an eyewitness's identification). Under these circumstances, the in-court identifications cannot be considered so bereft of reliability as to require exclusion.

We need only add that there was adequate opportunity at trial to address the serious issue of the soundness of the identifications. Because the sources of concern were clearly brought out through cross-examination and subjected to the jury's scrutiny, the case is unlike the classic instances in which pretrial procedure effectively bars the defendant from any opportunity for effective cross-examination to demonstrate a causal connection between undue police suggestiveness and final witness identification. *See United States v. Wade,* 388 U.S. 218, 235 (1967).

We turn attention now to the defendant's motion to set the verdict aside because of the juror's post-trial statements that an indictment was some evidence of crime and a defendant's silence some indication of guilt. In this appeal, the defendant does not argue for relief based on the statement about the evidentiary character of the indictment, but rests entirely on the juror's answers about the significance of a defendant's silence. The transcript on that point comprises these questions and answers:

> "The Court: Do you understand that [the defendant]
> [*Dalianis*, J.] has an absolute right not to testify?
>
> [The Juror]: Yes.
>
> The Court: Do you agree with that concept?
>
> [The Juror]: Yes.
>
> The Court: What would you think if he chose not to testify?
>
> [The Juror]: Showing his guilt.
>
> The Court: Excuse me?

[The Juror]:   Showing his guilt.

The Court:   Do you think that would affect your decision?

[The Juror]:   It might. I couldn't say yes or no."

Our threshold task in this case is to delineate the issue that the defendant seeks to raise, beyond his general assertion that the verdict should have been set aside. The motion before the trial court failed to articulate any legal theory, and simply claimed that the sixth and fourteenth amendments of the Constitution of the United States, and part I, article 15 of the Constitution of New Hampshire mandated a new trial on the facts pleaded. In his brief filed in this appeal the only indication of the nature of the defendant's claim is his reliance entirely upon the holding of *State v. Cere*, 125 N.H. 421, 480 A.2d 195 (1984). As we understand the defendant's approach, he seeks relief on one or the other of two theories: either the juror's later answers require a finding that he was disqualified as a juror at the earlier time when this case was tried; or the juror's answers require a finding that he must have departed from the court's instructions and engaged in erroneous or impermissible thought processes in reaching the verdict of guilty in this case. Our holding in *Cere*, however, does not support the defendant's assertion of either alternative theory of relief.

In *Cere* we decided that the trial judge had erred in refusing to supplement his jury *voir dire* in order to determine whether any of the venire panel had previously been found disqualified in the course of jury selection in a prior case. Our holding assumed that some of the panel had been found disqualified in the earlier proceeding because they were unwilling or unable to obey the court's instructions on the burden of proof in a criminal case, and we observed that any such panelists should have been removed then and there from the venire panel. We held that when counsel had attempted to identify any of the previously disqualified individuals, and had given the trial judge timely notice that some of them may have remained in the panel, a finding that any such individuals had subsequently served in the jury would entitle the defendant to a new trial.

*Cere* did not, however, purport to relieve a defendant of his responsibility at the time of his own jury selection by holding that a later finding of disqualification would necessarily relate back so as to taint an earlier trial. What is even more important, *Cere* recognized a standard for determining disqualification, which is not satisfied by the testimony recorded in the transcript before us, even taking that testimony as true at face value.

We mandated two *voir dire* questions to "identify[ ] those persons not qualified for jury service . . . ." *Cere, supra* at 425, 480 A.2d at 198. The first asks whether the prospective juror believes that being charged with a crime indicates probable guilt giving rise to a burden to prove innocence; the second asks whether a juror holding such an initial belief could apply the court's instructions to afford the defendant the presumption of innocence and to place the burden of proof beyond a reasonable doubt upon the State.

■ Although it is clearly within the court's discretion to excuse a panelist whose answer to the first question indicates a belief that a charge of crime implies some evidence of guilt, disqualification is not required unless the panelist answers the second question by indicating an inability or unwillingness to apply the correct constitutional standards described in the court's instructions. *See, e.g., Wainwright v. Witt*, 469 U.S. 412, 420 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)) ("a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath"); *Boulden v. Holman*, 394 U.S. 478, 483–84 (1969) (issue on challenge for cause is not existence of fixed opinion against capital punishment but ability to follow instructions conscientiously and give fair consideration to choice of penalty); *Irvin v. Dowd*, 366 U.S. 717, 723 (1961) (qualification turns not on mere existence of preconceived notion as to guilt or innocence but on ability to render verdict on evidence); *State v. Laaman*, 114 N.H. 794, 800, 331 A.2d 354, 358 (1974), *cert. denied*, 423 U.S. 854 (1975) (applying *Irvin v. Dowd supra* as standard under both State and National Constitutions); *see also United States v. Hill*, 738 F.2d 152, 153 (6th Cir. 1984) (qualification as juror turned on whether venire panelist "could accord the defendants the presumption of innocence and the requirement of proof beyond a reasonable doubt . . .").

■ When this standard is applied, it is clear that neither the facts alleged in the motion to set aside nor the statements reported in the transcript were sufficient to establish disqualification. As the transcript discloses, the juror indicated a belief that a defendant's failure to testify would be some indication of guilt, although he was uncertain whether his views would affect his judgment. But he was not asked whether this belief would prevent him from applying the correct constitutional standard, a matter of real significance in light of his statement that he "agree[d]" with the "concept" of the defendant's right to silence. Although the recorded testimony was suffi-

cient to raise questions about the juror's ability or willingness to follow constitutionally mandated instructions, the trial judge in the later case did not pursue those questions in accordance with *Cere*. And although it was sensible enough to go no further in the later case, the trial judge was not required to make a finding of disqualification when she excused the juror because, at that point, there was no sufficient indication that the juror could not or would not follow the law. It follows that the trial judge in the case before us was not compelled under State or national constitutional standards to find that the juror was disqualified at the time of the first trial. *See McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) (to obtain new trial on ground of juror disqualification "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause").

If we consider the alternative formulation of the defendant's theory of relief he fares no better. The juror's answers in the later *voir dire* are no clear indication that he ignored the court's instructions in the earlier trial by weighing the defendant's silence against him as evidence of guilt. But even if the juror's answers were understood to indicate that he had done this, and even if the motion for new trial were understood to make this claim, the defendant would not be entitled to a new trial on the existing record.

■ This is clear as soon as we recognize that on this theory of relief the defendant is seeking to use the transcript of the juror's testimony to impeach a verdict based on the juror's thought processes, a purpose for which such testimony has always been held incompetent under New Hampshire law. *See Bunnell v. Lucas*, 126 N.H. 663, 668, 495 A.2d 1282, 1285 (1985); *Caldwell v. Yeatman*, 91 N.H. 150, 152–53, 15 A.2d 252, 254 (1940). It is equally incompetent under sixth and fourteenth amendment standards. *Stein v. New York*, 346 U.S. 156, 178–79 (1953); *MacDonald v. Pless*, 238 U.S. 264, 267–68 (1915); *see United States v. Powell*, 469 U.S. 57 (1984). Although New Hampshire law has long mitigated this rule by according supervisory power to the trial court to reconvene a jury to enquire into a colorable claim of jury error, *see Bunnell v. Lucas*, *supra* at 668, 495 A.2d at 1285; *Caldwell v. Yeatman*, *supra* at 155, 15 A.2d at 255, the defendant's motion sought no such relief. Therefore we have no occasion to consider whether such a motion might properly have been granted in this case. *See State v. Mann*, 112 N.H. 412, 414, 297 A.2d 664, 666 (1972).

We conclude, therefore, that it was not error to deny the motion to set aside the verdict.

*Affirmed.*

THAYER, J., did not sit; the others concurred.