# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case Nos. 2022-0353 and 2022-0415, <u>State of New Hampshire v. Armando Barron</u>, the court on April 2, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The defendant, Armando Barron, appeals his convictions after a jury trial in Superior Court (<u>Leonard</u>, J.) for, among other charges, first-degree murder. <u>See</u> RSA 630:1-a, I(a) (2016). We affirm.

The jury could have found the following facts. Shortly after the defendant's wife (the Wife) told him that she wanted a divorce, the defendant discovered that the Wife had been communicating with the victim. The defendant then used the Wife's phone to lure the victim to a park, where the defendant assaulted and killed him.

The defendant then told the Wife to drive the victim's car — with the victim's body in it — to a remote location in northern New Hampshire. The defendant got in the car he had driven to the park and followed the Wife as she drove north in the victim's car.

The Wife called her employer and stated that she could no longer work there. When the Wife's co-worker told her that the victim was missing and asked her if she had seen him, the Wife responded "no." When the Wife received text messages from co-workers asking if she knew where the victim was, she responded that she "didn't know." The defendant departed, directing the Wife to camp in the woods and dispose of the victim's body. Two Fish and Game officers encountered the Wife at the campsite, and informed her that it was illegal to camp in that location. The Wife explained to the officers that she had had a fight with a female friend and that she was "clearing [her] head." The officers brought the Wife to the police station. She subsequently told the police about her involvement in the victim's murder. Shortly thereafter, the police apprehended the defendant.

The defendant was charged with, among other charges, first-degree murder. <u>See</u> RSA 630:1-a, I(a). Prior to trial, the State submitted proposed jury instructions, which included a false exculpatory statement instruction regarding the defendant's statements. The defendant objected, arguing that if the trial court provided the requested instruction with regard to the defendant's

statements, it should also "provide the jury with a similar instruction regarding the statements of [the Wife]." The State additionally moved for in camera review of the Wife's Violence Risk Assessment, which was prepared as part of a separate criminal proceeding against her. The trial court granted the State's motion for in camera review, reviewed the record, and declined to disclose any part of it to the defendant. The defendant moved for reconsideration. The trial court granted the defendant's motion and disclosed a redacted version of the record.

During jury selection the defendant moved to strike one of the potential jurors for cause. The trial court denied the motion and sat the potential juror as juror number 1. After a seven-day jury trial, the trial court gave the State's requested false exculpatory statement instruction with respect to the defendant's statements but not with respect to the Wife's. The jury found the defendant guilty of, among other charges, first-degree murder. See RSA 630:1-a, I(a). Juror number 1 was one of the jurors who returned the guilty verdicts against the defendant. This appeal followed.

The defendant raises three issues on appeal: (1) whether the trial court erred when it denied the defendant's motion to strike juror number 1 for cause; (2) whether the trial court erred by giving a false exculpatory statement jury instruction with respect to the defendant but not with respect to the Wife; and (3) whether the trial court erred when it redacted portions of the Wife's Violence Risk Assessment prior to disclosing it to the defendant. We conclude that the trial court did not err.

We review the challenged trial court rulings for an unsustainable exercise of discretion. See, e.g., State v. Dana, 175 N.H. 27, 37 (2022); State v. Soulia, 174 N.H. 225, 228, 239 (2021). An exercise of discretion is unsustainable if it was clearly untenable or unreasonable to the prejudice of the defendant's case. See Soulia, 174 N.H. at 228. With regard to the trial court's denial of the defendant's for-cause challenge to juror number 1, we additionally consider whether the trial court's decision was against the weight of the evidence. See id.

The defendant first argues that the trial court violated his right to a fair and impartial jury under the State and Federal Constitutions and New Hampshire law when it denied his motion to strike juror number 1 for cause. N.H. CONST. pt. I, arts. 15, 21, 35; U.S. CONST. amend. VI, XIV; RSA 500-A:12, II (2010). Specifically, the defendant asserts that the trial court's determination that juror number 1 was qualified — after juror number 1 refused to state during individual voir dire that, if she had a reasonable doubt as to the defendant's guilt, she would acquit — prejudiced his case. The State counters that the trial court did not err when it declined to strike juror number 1 for cause because the juror provided adequate assurance to the trial court that she could be fair and impartial. We agree with the State.

Juror number 1 did not demonstrate an unwillingness or inability to apply the correct constitutional standard as set forth in the trial court's jury instructions, and therefore her disqualification was not required. See State v. Cross, 128 N.H. 732, 737 (1986) (concluding that even when a prospective juror states that a criminal defendant must prove his innocence it is not an unsustainable exercise of discretion for the trial court to seat the juror if the prospective juror states she will apply the trial court's reasonable doubt instruction). Although juror number 1 was initially unable to provide a definitive response to defense counsel's questions and seemed to misunderstand the "beyond a reasonable doubt" standard, when the trial court asked the juror if she would have any reservations about applying the definition of reasonable doubt in the jury instructions, she responded "[n]o." We cannot say that the trial court unsustainably exercised its discretion when it denied the defendant's motion to strike and found juror number 1 qualified. See Soulia, 174 N.H. at 228 (noting that trial court's juror impartiality determination is entitled to special deference).

The defendant next argues that the trial court erred when it gave a false exculpatory statement jury instruction with respect to the defendant but not with respect to the Wife. The defendant asserts that "[w]hen a trial court makes multiple discretionary rulings, it is not enough that each ruling was not 'clearly untenable or unreasonable'; viewed together, the rulings must be evenhanded." The defendant specifically points to the Wife's false statements that she did not know where the victim was and that she was in the woods because she had had a fight with a female friend. We are not persuaded that the trial court's failure to give a false exculpatory statement instruction regarding the Wife's statements was error.

A false exculpatory evidence instruction "merely informs the jury that it may infer consciousness of guilt from an exculpatory statement if, in the light of other evidence produced at trial, the jury determines that the defendant knew the statement was false when it was made." State v. Fischer, 143 N.H. 311, 319 (1999) (quotation omitted)). The defendant has cited no binding authority requiring that a trial court's discretionary decision to give a false exculpatory statement instruction be "evenhanded." Nor have we held that it is appropriate or necessary to give an exculpatory statement instruction for a witness, and we are not persuaded that we should do so under these circumstances. See State v. Evans, 150 N.H. 416, 418-19, 422 (2003) (rejecting defendant's argument that trial court should have applied the same false exculpatory statement instruction regarding the defendant to one of the witnesses, in part, because exculpatory statements of other witnesses constitute a "theory of the case" on which the trial court is not required to instruct). Accordingly, the trial court's ruling was not an unsustainable exercise of discretion. See Evans, 150 N.H. at 422-24.

Finally, the defendant asserts that the trial court may have erred when it redacted portions of the Wife's Violence Risk Assessment prior to disclosing it to the defendant. We have reviewed the unredacted version of the records that the defendant challenges and have concluded that they were neither material nor relevant to the defendant's case. See State v. Girard, 173 N.H. 619, 628-29 (2020). Accordingly, we conclude that the trial court sustainably exercised its discretion when it disclosed only a redacted version of the records to the defendant. See id. at 627.

We have considered the defendant's remaining arguments, and have concluded that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993). Accordingly, we affirm.

Affirmed.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

4